### Zinn v. Leach
*[Cite as 8 AOA 99]*

*Case No. 90-CA-03, 90-CA-08*
*Champaign County, (2nd)*
*Decided November 29, 1990*

*John A. Smalley, Young & Alexander Co., L.P.A., 367 West Second Street, Dayton, Ohio 45402, Attorney for Plaintiff-Appellee/Cross-Appellant.*

*Francis S. McDaniel & David E. Beitzel, Freund, Freeze & Arnold, 1800 Dayton Arcade Centre, One South Main Street, Dayton, Ohio 45402, Attorneys for Defendant-Appellant/Cross-Appellee.*

*Karl E. Paulig, 113 East Court Street, Urbana, Ohio 43078, Attorney for Defendant.*

*William L. Havemann, Pickrel, Schaeffer & Ebeling, 2700 Kettering Tower, Dayton, Ohio 45423, Attorney for Defendant Nationwide Insurance Co.*

GRADY, J.

This is a consolidated appeal from the trial court's judgment awarding Plaintiff-Appellee Everett O. Zinn $400,000 in compensatory damages for injuries suffered in an automobile accident. Both parties have filed appeals challenging various parts of the proceedings below.

In his appeal, Leach presents four issues for our consideration:

(1) did the trial court err in overruling various motions concerning discovery matters;

(2) did the trial court err in overruling an objection to Zinn's closing argument;

(3) did the trial court err in allowing a physical therapist to offer medical causation testimony; and

(4) did the trial, court err in overruling a motion for new trial.

In his cross-appeal, Zinn presents two issues for our consideration:

(1) did the trial court err in overruling a motion for prejudgment interest; and

(2), did the trial court err in deferring a decision on a supplemental pleading to recover insurance proceeds pursuant R.C. 3929.06 pending the outcome of Leach's appeal to this court.

For the reasons stated below we overrule Leach's four assignments of error. We likewise overrule Zinn's assignment of error regarding the trial court's decision to defer consideration of his supplemental petition pending the outcome of a direct appeal to this court. The trial court's decision on these matters will be affirmed.

However, we reverse the trial court's judgment as it concerns Zinn's claim for prejudgment interest. Accordingly, the matter will be remanded for entry of judgment for prejudgment interest.

## I.
### Facts

On March 25, 1985, Everett Zinn was injured when the vehicle he was driving was struck broadside at an intersection by a vehicle driven by Billie Leach. Zinn, a timberman and recording studio owner, received a C-shaped laceration of the scalp which left permanent scarring, tightness and numbness of the scalp. He also sustained injury to his inner ear resulting in permanent hearing loss in one ear, permanent damage to the semi-circular canal with resulting disequilibrium or vertigo, and permanent tinnitus or ringing in the ear.

Zinn notified Leach's insurer, Nationwide Insurance Company, of his injuries two days after the accident on March 27, 1985. Nationwide assigned the claim to William Wingfield, one of its adjusters. James Sacco was Wingfield's supervisor. Wingfield obtained a copy of the police report and took recorded statements from Leach and Zinn (Wingfield Dep. Tr. 15, 16). Zinn stated that he had received treatment for his injuries at two hospitals and from three physicians (Wingfield Dep. Tr. 17).

On April 8, 1985, at Nationwide's request, Zinn executed an authorization enabling Nationwide to obtain medical and employment records. That same day Wingfield concluded that Nationwide owed "property damage and bodily injury." (Sacco Dep. Tr. 8). Wingfield immediately requested information from Drs. Lawrence Mervis and Aftab Butt, and Mercy Medical Center. Nationwide also sought a report from Dr. Mark Roberto. Nationwide received Mervis's report on May 10, 1985, Butt's report on May 22, 1985, and Roberto's report on September 4, 1985.

At the end of the 60 day "pricing period," Wingfield evaluated Zinn's claim at $6,500 (Wingfield Dep. Tr. 18). This was latter increased to $60,000, although neither Wingfield nor Sacco could recall how they arrived at this figure (See, Memorandum from Sacco to Wingfield, January 25, 1986, Wingfield Dep. Tr. 38). Notwithstanding the determination of liability, no settlement offer was made by Nationwide (Wingfield Dep. Tr. 26). Sacco testified that while the general documentation supported $60,000 in compensation, he did not feel such an offer was justified absent additional information on wage loss (Sacco Dep. Tr. 20). Sacco stated that no settlement was offered because he "did not want to insult the individual with an offer that would not be in line with what the injuries were ***" (Sacco Dep. Tr. 24).

On January 27, 1986, Wingfield formally asked Zinn by letter to transmit all medical and wage information concerning his claim to Nationwide. This was the first and only formal request for records sent by Nationwide to Zinn (Sacco Dep. Tr. 21, 22).

On February 24, 1986, Wingfield transferred Zinn's claim to James Sutter, another Nationwide adjuster. Sutter testified that although the value of the claim was probably discussed, he could not recall the value placed on the claim. Sutter admitted that he never communicated to Zinn's attorney, Michael Gmoser, a settlement offer (Sutter Dep. Tr. 9).

On June 16, 1986, Nationwide received from Zinn's attorney a packet of material containing the following: photographs of Zinn's automobile and injuries, a letter from Dr. Mark Roberto to Attorney Gmoser dated May 27, 1986 describing Zinn's treatment, a letter from Mark Main, L.P.T., to Dr. Roberto dated May 29, 1986 describing Zinn's treatment, and a letter from Rose Palermo, Zinn's Nashville attorney, describing his numerous recording awards.

Sutter testified that he reviewed the packet and requested the adjuster to obtain an independent medical evaluation (IME), IRS records, a current photograph and wage verification (Sutter Dep. Tr. 16, 27). The IME was eventually conducted by Dr. Paulson. Paulson was not called to testify at trial, a fact noted by Zinn during his closing argument. Sutter reviewed the packet but did not keep notes on the material and could not recall what the packet contained (Sutter Dep. Tr. 16). Sutter stated that numerous documents not then contained in his files would have been transferred to the attorneys representing Leach and Nationwide (Sutter Dep. Tr. 9).

In a memorandum dated February 6, 1987, Sutter stated that this might be a limits case but as we discussed we don't have enough information." (Sutter Dep. Tr. 28). A settlement offer of $40,000 was discussed at Nationwide on February 5, 1987, but never presented to Zinn (Sutter Dep. Tr. 29). Sutter admitted that while it was practice to make a settlement offer to let the "Plaintiff's attorney know if he wants to get more money than he is asking he has to come up with more proof" or come down in with his demand, no offer was made in this case. (Sutter Dep. Tr. 28, 29).

On March 6, 1987, Nationwide received a demand for settlement from Zinn's attorney, accompanied by another packet of information containing records from Mercy Medical Center, reports from Drs. Butt, DuVall, Farrell and Roberto, consultation and update reports from Mark Main, L.P.T., and numerous letters from various parties concerning the value of various timber and recording assets owned by Zinn. The accompanying letter reiterated Zinn's demand for settlement and warned Nationwide that a complaint would be filed shortly because the statute of limitation was close to expiring (Letter from Attorney Gmoser to Wingfield, March 6, 1987). Nationwide made no response.

Zinn and his wife filed a complaint against Leach an March 11, 1987, seeking $1,000,000 in compensatory damages.

On March 30, 1987, Leach filed separately an answer to Zinn's complaint and a thirteen branch request for production of documents. The Request for Production sought "any and all" documents concerning statements by Leach, photos or diagrams of the accident, medical or hospital reports concerning the injuries produced by the accident and any other confinement or treatment for ten years past, medical opinion and expense, lost income or earning capacity, tax records for three years past, impairment of daily routines, special damages of any kind, benefits from collateral sources, investigator's reports, and any evidence intended to be introduced at trial "and any and all documentary evidence whatsoever". The Request was signed by Nicholas E. Subashi, an attorney in the employ of Nationwide.

Subsequent to filing his complaint, Zinn made additional demands for settlement from Nationwide. On March 17, 1987, Attorney Gmoser wrote Wingfield supplying him with medical and economic documentation. Gmoser also demanded settlement for the policy limits. Similar letters were sent to Nationwide's attorney, Robert Burke, on April 14, 1988, November 14, 1988, and December 6, 1988. These demands went unanswered. Burke did, however, acknowledge on September 15, 1988, receipt of Zinn's income tax returns.

On June 16, 1987, Nicholas Subashi, the first attorney to represent Leach and Nationwide, withdraw as counsel of record and was replaced by James P. Seguin. Both Subashi and Seguin were employees of Nationwide. Seguin withdrew as counsel on October 27, 1987, and was replaced by Robert A. Burke. Finally, Burke was replaced by David Beitzel on January 20, 1989. The trial court specifically stated in the substitution entry that the trial schedule would remain in effect.

On April 25, 1988, Zinn submitted a pretrial statement in which he listed the names of witnesses he expected to call for trial. Included on this list were Drs. Butt, Duvall and Roberto and Mark Main, L.P.T. Zinn· also listed the exhibits he expected to use at trial.

On July 25, 1988, Zinn filed a motion for summary judgment which sought, in part, judgment on the issue of negligence. On August 15, 1988, the court found Leach negligent in causing the automobile accident and judgment was entered accordingly. Leach did not offer to settle the case.

In addition to filing a claim with Nationwide, Zinn also filed a claim with his insurer, Buckeye Union Insurance Company, for damages under the underinsured motorist provision of his policy. Buckeye evaluated the claim and in December 1988, settled with Zinn for $300,000.

On January 19, 1989, Zinn notified Leach that he intended to take depositions from Drs.

Aftab Butt and Michael DuVall, and Mark Main, L.P.T., for use at trial. On January 23, 1989, Leach's fourth counsel since institution of the action filed a motion to compel discovery and also sought a protective order cancelling the depositions. The court overruled the motions.

On March 1, 1989, five days before trial, Nationwide finally offered to settle Zinn's claim at policy limits of $100,000. The offer was rejected and the matter proceeded to trial.

On the first day of trial, Leach filed three motions in limine seeking to exclude from the jury the deposition testimony by Dr. Aftab Butt and two pages of exhibits allegedly requested from but withheld by Zinn. The trial court overruled the motions at an in-chambers conference conditioned on Zinn providing defense counsel with the requested documents by five o'clock that day.

In addition to other witnesses at trial, Zinn presented the deposition testimony of Aftab Butt, M.D., Michael Duvall, M.D., and Mark Main, L.P.T. Leach objected to the testimony of Main arguing that only a medical doctor could offer medical causation testimony.

During closing arguments, Leach also objected to Zinn's reference to Dr. Paulson's absence. The court overruled the objection. Following deliberations, the jury awarded Zinn $400,000 in compensatory damages.

On March 20, 1989, Zinn filed a motion seeking prejudgment interest alleging that Leach and Nationwide had not acted in good faith in attempting to settle the case. Shortly thereafter, Leach filed a motion for new trial alleging various trial irregularities, misconduct by Zinn in discovery matters and an excessive damage award. Following a hearing, the court overruled the motions finding that Zinn had failed to show that Leach did not make a good faith effort to settle the case and Leach had failed to establish any irregularities warranting a new trial.

Zinn then filed a motion pursuant to Civ. R. 15 for leave to file a supplemental petition to recover insurance proceeds to satisfy his judgment against Zinn. Shortly thereafter, Leach filed his appeal to this court. The trial court deferred ruling on Zinn's supplemental petition pending the outcome of the appeal. Zinn then filed his appeal and cross-appeal. The matter is now before us on a variety of alleged errors.

## II
### *Defendant-Appellant/Cross-Appellee Leach's Assignments of Error*

A. Failure to Compel Discovery

Leach states in his first assignment of error:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN OVERRULING APPELLANT'S MOTION TO COMPEL DISCOVERY, AND MOTIONS IN LIMINE, AND IN ALLOWING EVIDENCE BY MEDICAL EXPERTS AND OF MEDICAL EXPENSE UPON THE SUBJECTS CONCERNING WHICH PLAINTIFFS-APPELLEES HAD NOT RESPONDED TO DISCOVERY UPON."

Discovery provides a means to narrow and sharpen the scope of the issues to be litigated between parties to a dispute. *State, ex rel. Daggett v. Gessaman* (1973), 34 Ohio St. 2d 55. To this end, Ohio has adopted a liberal discovery policy which, subject to privilege, enables opposing parties to obtain all evidence that is material, relevant and competent notwithstanding its admissibility at trial. See, Civ. R. 26(B)(1). See, generally, 36 Ohio Jurisprudence 3d (1982), Discovery and Depositions, Section 25. Management of the discovery process lies solely within the sound discretion of the trial court. See *State, ex rel. Daggett, supra,* at syllabus 1; *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App. 3d 78; *Smith v. Klien* (1985), 23 Ohio App. 3d 146. Absent a palpable abuse of that discretion, a decision granting or denying a discovery request will not be disturbed by the reviewing court. *State, ex rel. Daggett, supra,* at syllabus 1; *Smith, supra.* See, also, *Rossman v. Rossman* (1975), 47 Ohio App. 2d 103; *Criss v. Kent* (C.A. 6, 1988), 876 F.2d 259.

The record before us indicates that before instituting an action, Zinn sent Nationwide on June 6, 1986, a packet of information containing photographs, medical reports and economic loss documents. Zinn sent Nationwide another packet of documents on March 6, 1987. This packet contained medical reports from Drs. Butt, Roberto and DuVall, progress reports from Mark Main, L.P.T., and a wide variety of economic loss documentation. Further, on September 15, 1988, Nationwide's attorney acknowledged, by letter, receipt of Zinn's income tax returns. Leach nevertheless argues that Zinn refused to comply fully with his

discovery request. He alleges that the trial court's refusal to compel discovery, issue a protective order, and sustain his motions in limine, was error.

Although attorneys have a duty to cooperate in the discovery process, cf., *Royal Indemnity Company v. J.C. Penny, et al.* (1986), 26 Ohio St. 3d 31, they are not required to act as investigators for opposing counsel. Civ. R. 34 is subject to the constraints of Civ. R. 26, which speaks of avoiding undue burden. Broad form discovery requests are not favored because they frequently burden the opposing party with an obligation to engage in an inquiry beyond facts known to him. Thus, one party is compelled to act as an investigator for the other, with the party seeking discovery possibly "taking undue advantage of his adversary's industry or efforts." Civ. R. 26(A). This distorts the discovery process by relieving the movant for discovery of the burden to pursue diligently those avenues which will narrow the issues and provide useful information.

Here, Leach filed a broad and categorical discovery request on March 30, 1987. No discovery order was sought until Leach moved to compel production on January ·23, 1989 -- almost two years after the filing of the complaint or a mere six weeks before trial. In the two years between answering the complaint and filing his motion to compel, Leach did not depose Zinn or any other witness and did not pursue any other avenues of discovery. Meanwhile, Zinn supplied Leach with many of the documents requested and provided authorization to obtain such additional medical records as Leach might want to have from those who provided care to Zinn, who were known to Leach.

Leach's reliance on a broad and categorical demand for production placed on Zinn the burden of providing all documents relevant to Leach's evaluation and preparation of his defense. Yet, Leach could have avoided this quandary by pursuing other avenues of discovery that would narrow and identify the issues involved, *i.e.,* deposing Zinn and his witnesses, or moving to compel production of documents sooner than six weeks before trial. This he did not do. If Leach was prejudiced by a lack of discovery, it was do more to his own conduct than any obstruction of the discovery process by his opponent.

We conclude that the trial court did not abuse its discretion in overruling the motion to compel discovery, the protective order, or the motions in limine. Leach's first assignment of error is overruled.

**B. Zinn's Closing Argument**

Leach states in his second assignment of error:

"MISCONDUCT OF COUNSEL FOR PLAINTIFFS-APPELLEES OCCURRED IN FINAL ARGUMENT TO THE JURY THAT DEFENDANT-APPELLANT DID NOT CALL DR. PAULSON OF COLUMBUS, AS A WITNESS AND DID NOT PRODUCE MEDICAL RECORDS, AND THE COURT ERRED IN OVERRULING THE OBJECTION OF COUNSEL FOR DEFENDANT TO SUCH ARGUMENT."

Attorneys have broad latitude in fashioning closing arguments. However, that latitude has limits. It is fundamental that a closing argument be confined to the questions at issue, the evidence presented, and the deductions and inferences to be reasonably drawn from the evidence. See, *Dew v. Read* (1895), 52 Ohio St. 519; *Coffey v. Shenk* (1974), 39 Ohio App.2d 156, at syllabus 1; *Cusumano v. Pepsi-Cola Bottling Co.* (1967), 9 Ohio App. 2d 105. A closing argument is improper if it argues facts outside the record, or makes assertions or attempts to draw inferences not supported by the evidence. *Herman v. Teplitz* (1925), 113 Ohio St. 164.

During rebuttal argument, counsel for Zinn stated:

"MR. SMALLEY. Thank you, your Honor. Ladies and gentlemen, the defendant has suggested what evidence we didn't produce. Let me suggest we produced virtually all the evidence in this case. *The defendant will have (sic) the opportunity to look for and get any prior medical records and had four years to have plaintiff examined by their Doctor, Dr. Paulson in Columbus. They didn't call Dr. Paulson. Why not?* They didn't produce any prior medical records from 1953 to the present time.

"MR. BEITZEL. Objection.

"***

"THE COURT. The objection is overruled. The comment is permitted to stay. You may proceed." (Emphasis added) (Tr. 476-477).

At no time during the trial did either party refer to Dr. Paulson or present any report he may have compiled for the defense.

Zinn's reference to Dr. Paulson's absence was improper as it sought to draw an inference

not supported by evidence in the record. While Zinn correctly states that counsel could refer to the opposing party's failure to call a medical expert who examined a plaintiff for the defense, see, *Penny v. Thurman* (1972), 34 Ohio App. 2d 190, it is equally correct that the record must establish, as condition precedent to such a reference, that the medical expert in fact examined the plaintiff for the defense. *Id.* at 191. There was no such evidence in the record. Thus, it was improper for counsel to comment on the absence of Dr. Paulson. Cf., *Knotts v. Valocchi* (1963), 2 Ohio App. 2d 188.

However, we cannot say that Zinn's comment was prejudicial. Notwithstanding error in allowing the reference, Leach fails to show prejudice; that is, that but for the error the outcome of the trial would, in all probability, have been different. Cf., *Smith v. Flesher* (1967), 12 Ohio St. 2d 107. Here the reference was a singular occurrence which took place during rebuttal argument. Given the totality of the circumstances and the substantial evidence supporting Zinn's claim, we cannot say that Leach was prejudiced by the reference.

Leach's second assignment of error is, accordingly, overruled.

### C. Medical Causation Testimony by a Physical Therapist

Zinn states in his third assignment of error:

"THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF A PHYSICAL THERAPIST THAT IN THE OPINION OF THE PHYSICAL THERAPIST, AND BASED ON 'REASONABLE DEGREE OF CERTAINTY,' THAT THE ACCIDENT WAS THE DIRECT AND PROXIMATE CAUSE 'OF THE PROBLEMS FOR WHICH (HE HAD) BEEN TREATING MR. ZINN.'"

At the deposition of Mark Main, L.P.T., the following colloquy took place:

"Q. *** I want to ask you to assume certain things.
"***
"Assuming this accident, that subsequent history, and the history that I'm asking you to assume to be true, that the man had no neck and back problems before this accident, then considering upon those things your expertise, experience and skill as a therapist and your findings and objective evidence of on-going injury or injury to the date of this last examination in 1989, do you have an opinion, Mr. Main, within a reasonable degree of certainty as to the direct and proximate cause of the problems for which you have been treating Mr. Zinn.

"MR. McDANIEL. Objection.
"THE WITNESS. Yes, I would say it's as a result of the accident.
"***
"MR. McDANIEL. *** Well, okay, I will try to discuss the subject. Number 1, I object to this witness, the physical therapist giving opinion evidence on medical causation."
(Deposition of Mark Main, L.P.T., at 49-50).

R.C. 4755.40 provides, in part:

"(A) 'Physical therapy' means the evaluation and treatment of a person by physical measures and the use of therapeutic exercises and rehabilitative procedures, with or with out assistive devises, for the purpose of preventing, correcting, or alleviating any disability. *** *Physical therapy does not include the diagnosis of a patient's disability, the use of Roentgen rays or radium for diagnostic or therapeutic purposes, or the use of electricity for cauterization or other surgical purposes. Physical therapy includes physiotherapy.*

"(B) 'Physical therapist' means a person who practices physical therapy as defines in this section, and includes physiotherapist." (Emphasis added)

In *Burress v. Park Cycle & Marine, Inc.* (Nov. 7, 1988), Stark App. No. CA-7492, unreported, the Court of Appeals for Stark County concluded that R.C. 4755.40 precludes physical therapists from giving medical opinions. The Stark County Court of Appeals found that a physical therapist could not "wander outside the statute to give a medical opinion as to permanent injury[.]" *Id.* at 4.

Though R.C. 4755.40 does not specifically apply to issues of witness competency, we agree with the view of *Burress, supra,* that the statute precludes physical therapists from giving diagnostic opinions in testimony as well as in the form of patient advice and communication. Therefore, we must conclude that the trial court erred in admitting that testimony. However, the error does not merit reversal unless it was prejudicial.

The record here indicates that sufficient credible evidence was presented beyond Main's testimony to support the conclusion that Zinn's injuries were caused by the collision. Dr. Aftab Butt testified that the permanent scarring, numbness and tightness of Zinn's scalp result-

ed from the accident (Deposition of Aftab Butt, M.D., at 24). Dr. Michael DuVall testified that Zinn's permanent hearing and coordination problems resulted from the accident (Deposition of Michael DuVall, M.D., at 66). Dr. Mark Roberto testified that many of Zinn's injuries and later complaints resulted, either primarily or secondarily, from the accident. Leach presented no evidence to contradict these conclusions.

We concluded that Leach was not prejudiced by the medical causation testimony of Main. Absent such a showing of prejudice, we will not disturb the decision of the trial court. See, *Smith, supra.* Leach's third assignment of error is overruled.

### D. Motion for a New Trial

Leach's fourth assignment of error states: "THE TRIAL COURT ERRED IN OVER-RULING MOTION OF DEFENDANT-APPELLANT FOR [A] NEW TRIAL."

Granting or denying a motion for a new trial lies within the sound discretion of the trial court. See, *Ludlow's Heirs v. Culbertson* (1829), 4 Ohio 5; *Beatty v. Hatcher* (1861), 13 Ohio St. 115; *Steiner v. Custer* (1940), 137 Ohio St. 448; *Krejci v. Halak* (1986), 34 Ohio App. 3d 1. Thus, whether the trial court erred in disposing of such a motion is determined under the traditional abuse of discretion standard; that is, was the court's attitude unreasonable, arbitrary or unconscionable. *Steiner, supra.* See, also, *Earson v. Cleveland Acceptance Corp.* (1969), 17 Ohio App. 2d 239.

Leach filed a six branch motion for a new trial. The grounds offered in support of the motion included Zinn's failure to comply with the discovery requests (Civ. R. 59(A) (1)), misconduct by Zinn during discovery (Civ. R. 59(A) (2)), excessive damages (Civ. R. 59(A) (4)), a judgment unsupported by the weight of the evidence (Civ. R. 59(A) (6)), and various errors of law by the trial court concerning discovery related matters (Civ. R. 59(A) (9)). In the alternative, Leach sought in branch six of his motion a seventy-five per cent remittitur of damages.

Having reviewed the record, we conclude the trial court did not abuse its discretion in overruling the motion for a new trial. Nothing in the record suggests that the trial court's disposition of this matter was unreasonable, arbitrary or unconscionable. *Steiner, supra.* As we noted above, any alleged discovery failures resulted as much from Leach's conduct as from Zinn's alleged refusal to comply with the discovery request. Further, given the extent of Zinn's injuries, his loss of income, and his future medical expenses, we cannot say the damage award was excessive or the result of passion or prejudice. See, Civ. R. 59(A) (4).

We concluded that the trial court did not abuse its discretion in overruling Leach's Civ. R. 59 motion for a new trial or his alternative request for remittitur. Leach's fourth assignment of error is, accordingly, overruled.

### II.
### Appellant/Cross-Appellant Zinn's Assignment of Errors

### A. Supplemental Petition

The assignment of error raised in Zinn's appeal states:

"THE TRIAL COURT ERRED BY STAYING APPELLANT[S]-PLAINTIFFS' ATTEMPTS TO EXECUTE ON ITS JUDGMENT, VIA A SUPPLEMENTAL PETITION, WHEN NO SUPERSEDEAS BOND WAS FILED BY OR ON BEHALF OF THE APPELLEES-DEFENDANTS."

Zinn filed a supplemental petition pursuant to R.C. 3929.06. This provisions states, in part:

"Upon the recovery of a final judgment against any firm, person, or corporation by any person *** for loss of damage on account of bodily injury or death *** if the defendant in such action was insured against loss or damages at the time when the rights of action arose, *the judgment creditor or the successor in interest is entitled to have the insurance money provided for in the insurance contract *** applied to the satisfaction of the judgment. If the judgment is not satisfied within thirty days after it is rendered, the judgment creditor *** to reach and apply the insurance money to the satisfaction of the judgment, may file a supplemental petition in the action in which said judgment was rendered, in which the insurer is made a new party defendant *** "*(Emphasis added)

R.C. 3929.06 provides a means to satisfy an existing judgment, against a tortfeasor from funds generated by his insurance contract with his own insurer. Because the funds are held by the insurer, a separate legal proceeding is required to determine the contract and its coverage. That separate proceeding is properly brought by the judgment creditor by way of a supplemental complaint.

When the trial court deferred a decision on the supplemental complaint brought pursuant to R.C. 3929.06, it did not stay any right of execution arising from the judgment held by Zinn. That judgment ran only to Leach, not to the insurer Nationwide. Therefore, the court was not required to order a supersedeas bond in connection with its order of postponement, which deferred a decision on the supplemental complaint until the merits of this appeal are decided. We see no error.

The assignment of error will be overruled.

### B. Prejudgment Interest

Zinn states in his cross-appeal:

"THE LOWER COURT ERRED IN FAILING TO GRANT PRE-JUDGMENT INTEREST TO THE PLAINTIFF WHEN DEFENDANT-APPELLANT WAS DETERMINED BY SUMMARY JUDGMENT TO BE NEGLIGENT, THE PLAINTIFF HAD THIRTEEN THOUSAND FIVE HUNDRED DOLLARS ($13,500.00) IN MEDICAL EXPENSES WITH PERMANENT INJURIES AND NO OFFER WAS MADE IN SETTLEMENT UNTIL ONE HUNDRED THOUSAND DOLLARS ($100,000.00) WAS OFFERED TO THE PLAINTIFF FIVE DAYS BEFORE TRIAL."

R.C. 1343.03(C) provides:

"(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, *if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.*"

As a condition precedent to receiving prejudgment interest, the movant must make a two-part showing. First, the movant must establish, (1) a valid judgment or decree ordering the payment of money as compensation for tortious conduct, and (2) a civil action not settled by the parties. See, *Vanderhoof v. General Acc. Ins. Group* (1987), 39 Ohio App. 3d 91.

Second, the movant must then establish that the party subject to a civil judgment for tortious conduct failed to make a good faith effort to settle the dispute. In *Kalain v. Smith* (1986), 25 Ohio St. 3d 157, the Ohio Supreme Court provided several factors relevant to assessing whether a party failed to make a good faith effort to settle the dispute. The Court stated in the syllabus:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) *if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.* If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." (Emphasis added)

See, also, *Holman v. Grandview Hosp. & Med. Ctr.* (1987), 37 Ohio App. 3d 151, 158. Whether the movant has met this burden is a factual issue. A trial court's decision awarding or denying prejudgment interest under R.C. 1343.03(C) will not be disturbed if supported by competent evidence in the record. *Edgerson v. Cleveland Elc. Illum. Co.* (1985), 28 Ohio App.3d 24.

We note that R.C. 1343.03(C) does not require a showing of "bad faith" by the defendant. Rather, as observed in *Dailey v. Nationwide Demolition Derby, Inc.* (1984), 18 Ohio App. 3d 39, 41:

"An 'effort to settle' can be something less than 'good faith effort' and still not be 'bad faith effort.' The mere failure to do anything towards settlement *** would be a failure to make a 'good faith effort to settle' but might well be short of a 'bad faith effort' to settle."

Thus, the party seeking prejudgment interest need only establish a lack of good faith, not bad faith.

Whether a party has not acted in good faith to settle a case is a fact-sensitive inquiry that must address the circumstances of each case as well as the relevant factors set out in *Kalain v. Smith, supra.* Determinations may vary according to the nature of the claim, the adversary role of the party concerned, and the means available to the party to determine his position in the litigation.

In this case the negligence and liability of Leach was clear from the date of the accident on March 25, 1985. Leach collided with Zinn's vehicle at an intersection at which Zinn had

the right-of-way. Zinn and his wife gave full statements about the accident. Leach claimed that he could not remember whether he ignored a traffic control device, though he did enter a plea of no contest to that charge.

As early as April 8, 1985, two weeks after the accident, Nationwide's adjuster concluded that the company would owe damages. In February 1987, an adjuster concluded that the company had a policy limits exposure, but declined to settle because the company lacked "information" on the claim. The trial court entered summary judgment for Zinn on liability on August 15, 1988, and in December 1988, Zinn's own insurer paid him $300,000 in underinsured coverage. Yet, Leach and Nationwide made no offer to settle the case until March 1, 1989, a mere five days before trial and almost four years from he date of the accident.

Zinn made every effort to settle the case by providing Leach and Nationwide extensive information and documentation. Numerous reports were provided from Zinn's physicians, and the substance of their opinions concerning their diagnosis of Zinn's injuries, their treatment of him, and his prognosis for recovery, did not change through the course of the claim. Complete medical expense information was provided. Support for prospective income loss was also provided. This information substantiated Zinn's four separate demands for settlement. Leach and Nationwide ignored those demands.

Nationwide failed to utilize the tools of discovery available to it to learn the additional information it complained that it lacked. No deposition was conducted of Zinn or his wife. No depositions were taken of Zinn's physicians. No consistent effort was made to use the releases obtained from Zinn to get medical or economic data. These measures could have been Used to narrow and focus the issues involved in Leach's potential liability. Instead, Nationwide presented Zinn only with a broad form, categorical demand for production of documents which was so open-ended that it might never be satisfied. Leach and Nationwide made no additional effort to obtain discovery, other than a late motion to compel production of the documents. Yet, by that time Nationwide had the information many times over. In truth, the demand for production was employed less as a tool for discovery than as a means to forestall settlement.

The record also reflects a failure of Leach and Nationwide to address the progress of the litigation. Four different attorneys were assigned, in succession, to represent Leach. Two of these were salaried employees of Nationwide. Two different adjusters were assigned. As the matter moved from person to person, past demands were renewed and evaluations repeated. Documents were lost or misplaced. Communication broke down. No effort was made to reply to Zinn's demands for settlement, and no responsibility was taken to move the matter to closure. [1]

Leach and Nationwide finally made an offer to settle the claim for "policy limits" only five days before trial. Yet, the information then before them concerning their risks and liability had been available to them or in their hands for months or years. The record reflects no reason to support that delay. Rather, it compels a conclusion that Leach and Nationwide wished to retain their capital for as long as possible while causing Zinn and his counsel to incur more expense and greater inconvenience.

R.C. 1343.03(C) has two purposes. It is intended to relieve the courts of the burden of litigating cases that should be settled by requiring litigants to address their settlement obligations realistically and in good faith. It is also intended to deny a recalcitrant litigant the benefits he has realized in retaining funds long after he knows he must ultimately pay them over, and to give his adversary who has acted in good faith compensation in the form of interest on the funds he would have realized had they been paid out when the obligation was clear.

No party is required to settle a claim against his better judgment. However, R.C. 1343.03(C) penalizes a party who fails to act in good faith to bring the matter to closure. We conclude that Leach and Nationwide failed to make that good faith effort. Their conduct did not meet the obligations of cooperation and rational evaluation of risks and potential liability set out in *Kalain v. Smith, supra.* The record is clear that they purposely delayed the proceedings through unproductive discovery calculated to protect them from their settlement obligations. Their last minute offer to settle the case on information known to them for months or years lacked good faith. Lastly, Leach and Nationwide cannot point to an objectively reasonable belief that they lacked

liability, and they could have had no such belief from the time of the summary judgment on liability in August, 1988.

We find that the trial court acted unreasonably in denying Zinn's motion for prejudgment interest. We hold that the trial court thus abused its discretion and erred thereby to the prejudice of Zinn.

### III
### Conclusion

The judgment of the trial court will be affirmed on all assignments of error of Appellant and Cross-Appellant, except as to Cross-Appellant's assignment concerning prejudgment interest, on which the judgment of the trial court will be reversed. The matter will be remanded to the trial court for entry of a judgment for prejudgment interest as provided by R.C. 1343.03(C) in favor of Appellee/Cross-Appellant Zinn against Appellant Leach.

WOLFF, P.J., and BROGAN, J., concur.

---

[1] Leach and his wife advised the court by motion and affidavit filed March 27, 1989, that until early 1989 they had no contact with any attorney provided them by their insurer, Nationwide, and that they were unaware of the summary judgment on liability rendered against them on August 15, 1988.