SMITH, APPELLEE, *v.* TRANSAMERICAN FREIGHT LINES, INC., APPELLANT.

(No. 6210—Decided March 22, 1943.)

*Mr. Roy L. Struble* and *Mr. John J. Cooney,* for appellee.

*Messrs. Hoover, Beall & Whitman,* for appellant.

Ross, P. J. This case is in this court on appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county, entered upon a verdict in favor of the plaintiff.

The action was instituted by the plaintiff to recover damages caused by the defendant when an alleged wrongful attachment was levied upon the property of the plaintiff.

From the record, it appears that the plaintiff was engaged in the business of renting trucks and trailers to freight transportation companies and providing drivers for such vehicles, and that such an arrangement existed between plaintiff and defendant at the time the incidents furnishing the basis for the instant action occurred. This arrangement was covered by a written contract between plaintiff and defendant.

Pursuant to the terms of such contract the son of the plaintiff who drove a truck and trailer of the plaintiff called for a load of merchandise in Chicago and started on a trip to Cincinnati. The normal time for the trip was not to exceed ten hours, which included two one-hour stops for rest and refreshment.

The time consumed by the driver for plaintiff upon this trip in question was three hours more than the normal time, and five hours above the driving time.

The shipment consequently arrived in Cincinnati on Saturday night too late to be disposed of in the freight depot of the defendant. The truck was parked under the loading shed of defendant by the son of plaintiff, where some watchman supervision was in effect.

The top of the truck furnished by the plaintiff was covered with a tarpaulin. On Monday morning when the truck was examined by defendant it was found that the tarpaulin had been cut and the partial contents of a package of suits removed. The value of the goods stolen amounted to several hundred dollars.

Plaintiff's son was questioned about the matter and the record shows that at an investigation at which a member of the F. B. I. was present the following occurred:

"Q. Now just one more question, then, M.. Smith. I just want to make sure; you say you didn't tell the F. B. I. in Mr. Huffner's presence, the man from the F. B. I. that you had no idea, no knowledge whatever of what happened to the top of that truck or when the top of that truck was cut into?  A.  I told him it was bound to be cut into down in the lot because it wasn't cut when I put it in there.

"Q.  Didn't you tell him you had no idea when it was cut?  A.  No.

"Q.  Where was this cut?  A. It was cut down in their lot; it had to be."

The son of the plaintiff testified he made frequent inspections of the top of the truck during the progress of the trip, because there had been frequent thefts from trucks in transit from Chicago.  These thefts were known to the defendant.

It is also in evidence that during the time the son of plaintiff was spending his leisure time in or at a lunch stand some distance out of Chicago, the truck was left unattended.

The son of plaintiff attempted to remove the truck and trailer from the depot of defendant after the same was unloaded, and when he insisted on removing it, was arrested.  On his return to the depot, he found that the truck and trailer had been removed.

The defendant, through its manager, consulted counsel and made a fair and full disclosure of the facts at his disposal at that time.  Two variations between the account and the facts are claimed by plaintiff.  One is that defendant's manager stated the overtime on the trip was four or five hours as compared with three

hours. This variation cannot be considered as a fatal misstatement, in view of the normal time allowance and the overtime consumed. It is also claimed that counsel was advised that the plaintiff guaranteed safe delivery. The contract was exhibited to counsel and showed the true nature of the contract. This situation again presents no misstatements of facts. The law provides that if a defendant in an action for malicious prosecution makes a fair and full disclosure of all the facts, covering the entire period involved, such disclosure shall constitute a valid defense to such action. 25 Ohio Jurisprudence, 914 *et seq.*

The preponderance of the evidence is in support of defendant that a fair and full disclosure was made and defendant proceeded only under advice of counsel.

Resuming the statement of facts—the defendant acting upon such advice of counsel, brought suit against the plaintiff, charging its loss to have been proximately caused by the negligence of plaintiff and his employee. The plaintiff being a nonresident, constructive service was obtained after attaching his truck and trailer. It is for such act alleged to have been performed with malice and without probable cause of a valid action against plaintiff, that this action is maintained. Unfortunately, at the time the attachment was levied, the plaintiff was in default for payments upon a loan from a finance company, for which the truck and trailer had been pledged as security. The plaintiff had been threatened by the finance company with dispossession previous to the time of the attachment.

The action brought by defendant against the plaintiff was tried and, failing to establish that any negligence of the plaintiff was the proximate cause of the loss of the defendant freight transportation company, judgment in that action, for plaintiff in this action, was affirmed in favor of plaintiff after two appeals. The

attachment was discharged. The finance company secured repossession of the truck and this instant action was instituted.

In order to sustain the verdict in this case it must appear from a preponderance of the evidence that the action against the plaintiff for negligent transportation was instituted by the defendant with malice and without probable cause. 25 Ohio Jurisprudence, 924.

In *Crow* v. *Sims*, 88 Ohio St., 214, 102 N. E., 741, the first paragraph of the syllabus is:

"A suit for damages for causing an attachment to issue as auxiliary to a civil action for debt is no exception to the general rule that in all actions at common law for malicious prosecution or for the abuse of the processes of the court, malice and want of probable cause must be alleged and proven."

No bond was given in the instant case, the plaintiff, defendant in the attachment proceeding, being a nonresident. There was nothing inherently wrong or malicious in the levying of the attachment. It is not sufficient that the successful defendant in the action to which the attachment proceeding was ancillary, merely prove that the plaintiff in that action was unsuccessful.

Many trials present instances where the trier of facts must weigh evidence presented and balance inferences to be drawn from the facts. Reasonable minds in most of such cases may easily differ as to the value of the facts and the conclusions from such inferences, and the reviewing court may not disturb such results, unless the final determination is manifestly contrary to the weight of the evidence, or the inferences adverse to reason and justice.

Unless it appear here, therefore, that the action of this defendant against the plaintiff was groundless, that no probable cause existed which a reasonable per-

son would accept as justification for the action and that either actual or legal malice existed, the success in the former action is unavailing as a basis for a cause of action in the instant proceeding.

An examination of the facts as they were presented to the defendant requires the conclusion that the weight of the evidence fails to support the existence of such necessary predicate for the instant case.

Complaint also is made by the defendant as to the general charge. Without in detail here discussing its various elements, some of which are subject to criticism and which if the case is retried will undoubtedly be eliminated, for, at least, their ambiguity, it may be said that the whole charge as noted specifically hereinafter was a fair statement of the law applicable to the facts. A charge conforming to the law herein noted will properly present the issues involved in such law to the jury.

As to the special charges of which complaint is made—the first charge asked for by defendant and refused by the court is as follows:

"If you do not find by a preponderance of the evidence that the action of the defendant in filing suit against the plaintiff and attaching his trailer in order to obtain service upon him in that suit was taken as a result of malice on the part of the defendant toward the plaintiff, then your verdict must be for the defendant."

Such charge was correct and should have been given by the court.

The second charge refused is as follows:

"In order for the plaintiff to recover in this case he must show by a preponderance of the evidence that the defendant acted through malice toward the plaintiff. Such malice may be either actual or implied, but malice can be implied only from the intentional doing

of a wrongful act, with the knowledge that such act is wrongful.''

It is objected that the statement ''malice can be implied only from the intentional doing of a wrongful act'' is incorrect. How could malice be inferred from the unintentional doing of a wrongful act? Malice is a state of mind. It may exist as a vicious attitude seeking injury to the one against whom it is directed. It may exist in one who, regardless of another's legal rights, commits a wrong against him, but if the doer of the wrong is wholly ignorant that he is doing such wrong, how can it be said his act was malicious? In either case the attitude of mind must be active. In the instant case, certainly, the defendant intentionally filed the suit against plaintiff and levied the attachment. If these acts were wrongful—that is, violations of the plaintiff's legal rights—they were intentional acts and malice could be inferred. On the other hand, had these actions been instituted by mistake or without the knowledge of defendant, but in its name, though wrongful, they could not be considered intentional, nor could malice be inferred therefrom.

The special charge was correct and should have been given.

The court in its general charge instructed upon the measure of damages as follows:

''If you should find in favor of the plaintiff and that the defendant was impelled to file the action by legal malice as that term has been defined, by legal malice only, you may award him such an amount of damages by way of compensation as in your judgment will make him whole for whatever injury you may find he has suffered as a direct result of the wrongful attachment. In this connection you may consider any loss which he may have proven by a preponderance of the evidence to have suffered by reason of loss of

business or employment or any and all loss which he may have suffered by reason of being deprived of the use of the attached property.''

And, again:

"It was the order of the Municipal Court that the property be turned over to the Washington Loan & Finance Company. The court wishes to instruct you that insofar as damages are concerned for the per diem or weekly loss of the use of this property that any award that you may consider, in the event you find in favor of the plaintiff and find that damages have been proven by a preponderance of the evidence, that any such award must be limited to the deprivation of that property for the period of days prior to the time that the Municipal Court decreed the property to the possession of the Washington Finance Company.'' *

In 4 Ohio Jurisprudence, 374, it is stated:

"Damages. The damages for which the obligors on the bond are liable are the damages for wrongfully depriving the attachment defendant of the enjoyment of his property as well as the natural and proximate consequences of the levy of the attachment. It has been stated:

" 'We suppose the object of the security to the debtor was to provide indemnity for the direct injury he might sustain by the seizure and detention of his property. To compensate him for any other damages than those that immediately follow the attachment, we do not think was the intention of the Legislature, in adopting the remedy, and requiring the security to be entered. An action upon the undertaking does not supersede a suit for any consequential injury to the reputation or feelings of the debtor, growing out of the unjust and malicious conduct of the creditor; this remedy is still preserved, and the injured party may avail himself of its benefits.'

"The plaintiff, a merchant, may recover damages for interruption to his business, caused by the wrongful seizure and detention of a stock of goods kept for sale by retail. Damages supposed to result by reason of an injury to the reputation of goods caused by the levy of an attachment thereon, are too vague and uncertain to be capable of legitimate proof, or to form the basis of a recovery in an action on the attachment undertaking. It has been stated that destruction of the property attached by flood, fire or other cause cannot be included unless it appears it was caused by wrongfully obtaining the attachment. Compensatory damages in such cases includes reasonable costs and expenses incurred in procuring the discharge of the attachment, and the restoration of the attached property, but not the costs and expenses incurred in the defense of the principal suit."

It is apparent that the plaintiff could recover any damages which would be proper in an action upon an attachment bond, as well as those not included in such an action. In *Alexander* v. *Jacoby*, 23 Ohio St., 358, it is stated in the fifth and sixth paragraphs of the syllabus:

"5. In such action the plaintiff may recover damages for interruption to his business, caused by the wrongful seizure and detention of a stock of goods kept for sale by retail.

"6. Compensation in such cases includes reasonable costs and expenses incurred in procuring the discharge of the attachment and the restoration of attached property."

As the trial court excluded from the consideration of the jury the loss of the trailer as an element of damages it does not appear that the charge was erroneous as claimed. It would have been better, how-

ever, had the trial court in its charge again reminded the jury of such elimination.

It is claimed also that in view of the fact that plaintiff is permitted to recover only attorney fees, reasonable costs and expenses incurred in the proceeding to discharge the attachment, the court erred in permitting evidence of the amount of attorney fees paid by plaintiff for services of attorneys in connection with the entire matter including discharge of the attachment, defense of the main action in the trial court and on appeal. The limitation of the rule is clearly stated hereinbefore. *Alexander* v. *Jacoby, supra.*

The court should have so limited the recovery of attorney's fees, and if it were impossible to separate those applicable only to the attachment from those applicable to the main proceedings, all should have been excluded.

Before concluding, it is noticed that the defendant also addresses an assignment of error to the amount of the damages found by the jury, to wit, $1,550. No sum was specifically awarded by the jury as punitive damages. The whole amount therefore was confined to compensatory damages.

The amount awarded by the jury, in view of the charge of the court and the law applicable, was grossly excessive and directly and manifestly contrary to the weight of the evidence upon this issue.

For all of these reasons, the judgment of the trial court will be reversed and the cause remanded for a new trial.

*Judgment reversed.*

HILDEBRANT and MATTHEWS, JJ., concur.