PEARSON, APPELLANT, *v.* CLEVELAND ACCEPTANCE CORP., APPELLEE.

(No. 28919—Decided March 27, 1969.)

*Mr. Ishmael C. Childs*, for appellant.
*Mr. S. Martin Kirsh*, for appellee.

DAY, J. The order of a trial court granting a new trial after a jury verdict is a final, appealable order. *Price v. McCoy Sales & Service, Inc.* (1965), 2 Ohio St. 2d 131, 134, 140. The trial court is required to specify in writing the causes for the order. Section 2321.17, Revised Code. Where, as in this case, the trial court states the causes for its action, the issue on appeal is whether the trial court abused its discretion.

Two grounds are specified in the lower court's legal conclusion assigning causes for its order. ("Excessive damages appearing to have been given under the influence of passion or prejudice"—Section 2321.17 (D),

Revised Code—and "* * * not sustained by sufficient evidence * * *"—Section 2321.17 (F), Revised Code.)

Plaintiff's cause of action was based on a theory of wrongful garnishment. The evidence developed on trial indicates that the plaintiff bought an Emerson 19 inch Television set from the Les Brown Furniture Company on a purchase money security agreement. Les Brown Furniture negotiated a transfer of the paper to the defendant corporation without recourse. The original selling price was $290. Finance and service charges brought the total to $375.12. Payments were spread over 18 months.

Leslie Brown, proprietor of Les Brown Furniture Company, was a stockholder in defendant corporation. Although the vice president of defendant testified she was not sure of Brown's position with the company, the record is quite clear that he was on the committee which determined whether to accept accounts and he himself could make the crucial determination to accept or reject. The degree to which his dual role facilitated the negotiation of the commercial paper from Les Brown Furniture Company to the defendant, with or without recourse, is a matter of inference.

Following acceptance of the paper, two notices of garnishment went out from the defendant to the plaintiff. The first followed a judgment taken in Cleveland Heights Municipal Court in January of 1964 for $333.44. No money was received because an intervening trusteeship in Cleveland Municipal Court released the garnishment. Thereafter, the defendant received two notices of the trusteeship and participated in the trusteeship, receiving payments of $86.95, $95, $23, and $20. An additional $50 was realized from a sale of the chattel after repossession. Defendant's exhibit No. 1 indicates that the defendant provided the trustee with the balance figure necessary to close the plaintiff's account sometime after April 29, 1964.

In the face of receipt of payments under the trusteeship and provision of a closing balance to the trustee, the record shows that the defendant again had a garnishment served on the plaintiff's employer during the late spring

or early summer of 1966. This was sometime after the garnisheeing company had been paid in full. Meanwhile, plaintiff had been discharged from his job with a consequent loss of time, seniority, vacation rights, and severance pay. In addition, there was evidence that these pecuniary losses contributed to an emotional condition affecting his work performance adversely.

Robert H. Dasher testified that he was president of the company employing the plaintiff at the time of the second garnishment which provides the occasion for this litigation. The second garnishment came at a time when the employer had stopped deductions under the trusteeship. At the time of trial, Dasher was still president of his company but it had been sold and both his company and its purchaser were subsidiaries of Equity Corporation of New York. Dasher testified that the "Company" had "agreed" to restore the plaintiff to his job with full seniority rights if in his lawsuit the plaintiff could prove that he had "paid [his] indebtedness." There is no evidence in the record that confirming corporate action was taken to make the promise official. Nor was there any evidence to support a conclusion that the promise was an enforceable one.

With the facts in this stance, the jury returned a verdict for the plaintiff in the sum of $5,000. The court below granted a defense motion for a new trial and, pursuant to the plaintiff's request, entered findings of fact and conclusions of law which it deemed supportive of its action on the motion.

To determine whether the trial court erred in granting the motion for new trial, it is necessary to assess its exercise of its discretionary powers. An unabused discretion must be sustained. A contrary rule is compelled when discretion is offended.

A leading case in Ohio on the subject of abuse of discretion approves a negative definition:

"* * *'the discretion of the trial court must *not* be exercised *absolutely, arbitrarily,* or *capriciously,* but only in accordance with *fixed legal principles* and with a view to

*promoting substantial justice.'* * * *'' (Emphasis added.)
*Leiberg, Admx.,* v. *Vitangeli* (1942), 70 Ohio App. 479.

See, also, *Poske* v. *Mergl* (1959), 169 Ohio St. 70, 75, where it is said:

"* * *. 'Abuse of discretion,' in relation to the sustaining of a motion for a new trial implies an unreasonable, arbitrary, or unconscionable attitude upon the part of the court. * * *"

The definitions abound in generalities which acquire meaning and purpose only as applications in particular cases put them there. We do not attempt to assay every situation in which an exercise of discretion can be said to be "unreasonable," "arbitrary" or "capricious" not in accord with "fixed legal principles," and without a "view to promoting substantial justice." However, few propositions seem clearer than this—when a trial court grants a new trial in the face of the manifest weight of the evidence and overturns a verdict of a jury on the flimsiest, to the point of nonexistent, countervailing proofs, or no proofs at all, the standards of *Leiberg* and *Poske* are violated. Discretion has been abused in the present case.

To be specific and relevant, an analysis is necessary of the findings of fact and conclusions of law made by the trial court. The trial court made nine findings of fact.

We shall consider them in order:

(1) "* * * the verdict was not sustained by sufficient evidence."

Since 1934 the rule determining whether a jury issue is made in Ohio has been that a trial judge is not "required to send the case to the jury" unless there is "something substantial" in evidence:

"* * * from which a reasonable mind can draw a logical deduction. If reasonable minds may draw different inferences, or reach different conclusions, a jury question is presented. * * *." *Hamden Lodge* v. *Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469, 482.

The logic of the *Hamden* rule impels the conclusion that a trial court improperly invades the exclusive domain of the jury when, in the face of substantial evidence to support a verdict, it orders a new trial on the weight of the

evidence where that same evidence is sufficient to render a directed verdict erroneous. Whether the rule in Ohio goes as far as the logic is debatable.

In the case of *Poske* v. *Mergl*, 169 Ohio St. 70, at 74, it is indicated that granting a new trial after a verdict sustained by evidence, in contrast to entering judgment after such verdict, does not amount to abuse of discretion:

"* * * If a court finds a judgment to be against the weight of the evidence and thereupon enters a judgment contrary to a verdict of a jury, where there is evidence sufficient to send the case to a jury, such action amounts to a substitution of the finding of the court for that of the jury and is highly erroneous. However, in granting a new trial, no judgment is substituted for one on a verdict of a jury but simply another trial must be had.''

Nevertheless, *Hamden* surely provides substantial support for the proposition that the discredited scintilla rule is not available to a trial court in specifying a cause for a finding adverse to a jury verdict on the weight of the evidence, and nothing in *Poske* forbids this conclusion.

Without further elaboration, the summation of the facts clearly demonstrates the overwhelming substantiality of the evidence in support of the verdict and the near to vanishing record evidence to the contrary. This conclusion gains support as the review of the findings of fact continues.

(2) "* * * defendant did not act maliciously, recklessly or wantonly in issuing an aid in execution against the plaintiff.''

Malice can be implied only from an intentional wrongful act. *Smith* v. *Transamerican Freight Lines, Inc.* (1943), 72 Ohio App. 239, 245; *Delk* v. *Colonial Finance Co.* (1963), 118 Ohio App. 451, 455-457. The evidence of two garnishments by the defendant, the first being defeated by the trusteeship and the second coming after defendant's participation in the trustee's disbursements and the discharge of its claim, provides an ample basis for a jury conclusion of intentional wrong virtually to the point of compelling that conclusion.

(3) "* * * if the defendant did issue the affidavit in

aid of execution, it did so in good faith and did [so] solely as a result of bookkeeping error."

The record supports no ambivalence on the issuance by the defendant of the second affidavit in aid of execution, which is the basis for the present action. The petition alleges that the defendant "took" an aid in execution. The defendant concedes in its answer that it filed one. There is no denial elsewhere. Bookkeeping error finds no support at all in the record. A court finding without evidence cannot nourish the record. Finally, the characterization of the defendant's action is peculiarly the function of the jury under proper instructions from the court. The instructions are not under attack in this appeal. No cross-assignment of error was filed under Rule VII A (2) (b) of the Courts of Appeals.

The next three findings are considered together because they are interrelated.

(4) "* * * plaintiff did not establish that he lost his job."

(5) "* * * plaintiff did not establish that he lost his seniority."

(6) "* * * plaintiff's employer testified under oath that in the event the jury returned a verdict in favor of the plaintiff, which as a matter of fact it did, he would be restored to his original position, wages, seniority and all other benefits."

The testimony of plaintiff's employer specifically recounts plaintiff's loss of job and seniority and tells as well of a company "agreement" to "hire him back with all his seniority rights * * *" if he could prove he had paid his indebtedness.

Pursuing its fact-finding obligation, the jury was free to believe all or any part of the employer's testimony and, judging from its verdict, believed the loss of job and seniority but disbelieved, or at least did not credit, the restoration agreement. It cannot be said that the latter conclusion is without substance, particularly since the record is (1) barren of other evidence of corporate agreement; (2) contains no evidence delineating consideration for the

agreement; and (3) substantiates by uncontested evidence that the original employing company was sold by the time of trial and had become a subsidiary to a parent enterprise. No evidence supports findings (4) and (5), and (6) is a statement of fact without legal consequence.

(7) "* * * constant reference throughout the trial was made by counsel for the plaintiff to a party not involved in this action nor involved in this case in any manner who had just prior to the time of trial received a great deal of unfavorable publicity placing him in a derogatory light and bringing him great notoriety which may have influenced the jury verdict."

Not a syllable in the record in this case refers to the influence of publicity on any phase of the proceeding. It was not until the defendant filed its brief in support of its motion for new trial that the issue of passion or prejudice based on references to Les Brown appears anywhere in the papers generated by the case.

It goes without saying, but we say it anyway—a lawyer's brief is not evidence. And a trial court, in making its findings of fact, has no more justification for an excursion outside the record than a lawyer has in his brief. Passion or prejudice is a matter of proof, not assertion, and proof is not made from an empty record. Thus, the only probative support for the conclusion of "passion or prejudice" is the size of the verdict. Size, per se, will not suffice for proof of passion or prejudice. See, *Larrissey* v. *Norwalk Truck Lines* (1951), 155 Ohio St. 207, 222. Should the verdict be so overwhelmingly disproportionate as to shock reasonable sensibilities, a different conclusion might be justified. The verdict of $5,000 does not reach that proportion on the evidence in this case.

Judicial assumption to the contrary in the absence of other evidence abuses discretion.

(8) "* * * plaintiff lost eight (8) days from work as a result of defendant's action and * * * he earned 2.65 per hour at this time."

This finding of the trial court is clearly supported by substantial evidence in the record, but the thrust of this

is to undergird the verdict rather than the order for a new trial.

(9) "* * * plaintiff suffered no other damages."

The record is replete with evidence of damages other than time and pay lost; for example, seniority, vacation benefits, severance pay and emotional distress affecting work performance.

The conclusion of law by the court below specified passion or prejudice and insufficient evidence as causes for the rule, and the court proceeded to grant a new trial while bolstering its conclusion by reference to publicity considerations *not* in the record and a finding that plaintiff "suffered no other damages" when the record reflects no more than the slightest to the point of nonexistent evidence to support the conclusion on the weight of the evidence and damages and absolutely none on the issue of publicity.

We hold the exercise of discretion in the present case was unreasonable, arbitrary and capricious because a new trial was ordered (1) on the insufficiency of the evidence where the record presented overwhelming support for the verdict with the slightest or no evidence to the contrary, and (2) on a conclusion that the verdict was influenced by passion or prejudice without any record support whatever.

The order of October 10, 1967, by the court below granting defendant's motion for a new trial is reversed and vacated and judgment is hereby rendered on the verdict of the jury.

*Judgment reversed.*

WASSERMAN, C. J., and CORRIGAN, J., concur.