The Estate of Norma Delawder appeals a judgment from the Lawrence County Court of Common Pleas denying the motion for a new trial and allowing a jury verdict to stand. The appellant claims that the jury's damage award inadequately compensates Ms. Delawder for her personal injuries. The appellant assigns the following errors:
 I. "THE JURY AWARD OF DAMAGES IN THE AMOUNT OF TWO THOUSAND FIVE HUNDRED [DOLLARS] ($2,500.00) IS CONTRARY TO LAW DUE TO THE JURY'S FAILURE TO COMPENSATE PLAINTIFF/APPELLANT FOR THE DAMAGES TO WHICH SHE IS LEGALLY ENTITLED."
 II. "THE COURT'S FAILURE TO ORDER A NEW TRIAL IS A REVERSIBLE ERROR SINCE THE JURY AWARD IS CONTRARY TO LAW AND IS INADEQUATE."
 III. "THE JURY AWARD OF DAMAGES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 IV. "THE JURY AWARD FOR DAMAGES IS A RESULT OF THE PREJUDICIAL INFLUENCE THAT RESULTED FROM PLAINTIFF/APPELLANT'S UNAVAILABILITY DUE TO AN UNRELATED DEATH."
Finding no reversible error, we affirm the trial court's judgment.
 I.
In August 1995, seventy-year old Norma Delawder tripped over a raised portion of the sidewalk in front of the home of appellees Michael and Patricia Pierce. Ms. Delawder suffered cuts and bruises to her face and complained of headaches and neck pain after her fall. Ms. Delawder filed a complaint against the appellees, alleging their negligent failure to maintain the sidewalk in front of their home caused her injuries.[1]
The evidence at trial showed that Ms. Delawder sought treatment from several doctors and a chiropractor following the fall, incurring total charges of $12,022.74. Dr. Kevin Willis, a family practitioner, treated Ms. Delawder and diagnosed her with serious facial bruises and a neck sprain. Ms. Delawder continued to report neck pain during other visits in August 1995, but Dr. Willis did not see any signs of neurological dysfunction. Over the next several months, Ms. Delawder continued to visit Dr. Willis and complained of headaches and neck pain. However, x-rays revealed no abnormalities in her face and neck. During these visits, Dr. Willis continued to observe tenderness in Ms. Delawder's neck and eventually diagnosed her neck pain as chronic. Dr. Willis also testified that he referred Ms. Delawder to a maxillofacial surgeon and ordered a CAT scan for diagnosis of her sinus congestion and sinus pain. Dr. Willis could not determine with any certainty whether her sinus pain was related to her fall.
Ms. Delawder also sought treatment from Dr. David Herr. Dr. Herr, an orthopedist, examined Ms. Delawder's knees, in which she also experienced pain. Prior to her fall, Ms. Delawder had undergone knee replacement surgery in 1994. Neither the x-rays nor Dr. Herr's examinations revealed any abnormalities in Ms. Delawder's knees that were attributable to the fall. Notes from Dr. Herr indicate that Ms. Delawder received physical therapy associated with her knees and reported improvement in the months following her fall. While the appellant entered Dr. Herr's notes and a summary of his charges as evidence at trial, Dr. Herr did not testify. Dr. Willis had testified that Ms. Delawder did not report prominent knee pain until a visit in October 1995, at which time he recommended she see Dr. Herr.
The appellant also presented testimony from Dr. Richard Thompson, a chiropractor who treated Ms. Delawder. Dr. Thompson treated Ms. Delawder on fifty-nine office visits spanning almost two years, resulting in nearly $7,500 in charges. Referrals by Dr. Thompson resulted in approximately $1,500 in additional charges. Dr. Thompson testified that x-rays and an MRI revealed no abnormalities associated with Ms. Delawder's fall and noted that Ms. Delawder showed signs of pre-existing arthritis, osteoarthritis, and osteoporosis. Dr. Thompson agreed that Ms. Delawder suffered from "soft tissue injury." His treatment of Ms. Delawder consisted primarily of ultrasound, electronic stimulation of injured areas, and spinal manipulation.
Ten months after the accident, Dr. Thompson referred Ms. Delawder to Dr. Douglas Deitch, a neurologist. Dr. Deitch diagnosed Ms. Delawder with a chronic neck injury and post-concussive headaches. Dr. Deitch based his diagnosis of the headaches on Ms. Delawder's recollection of losing consciousness briefly following her fall and from her complaints of headaches and dizziness. Dr. Willis made a similar diagnosis regarding Ms. Delawder's headaches. A brain CT scan and an MRI, however, showed no abnormalities related to her fall.
The appellees presented no expert testimony during the defense's case-in-chief. However, the appellees cross-examined each medical expert presented by the appellant. The defense theory focused on whether all the treatments and conditions described by the doctors and chiropractor were related to Ms. Delawder's fall. While each of the medical witnesses characterized their charges as necessary and directly related to the accident, there was also testimony concerning pre-existing medical conditions and the normal findings associated with Ms. Delawder's x-rays, MRI, and other procedures.
The jury found the appellees liable for negligence and calculated total damages of $2,500. The jury also apportioned the total liability, finding the appellees fifty percent negligent and Ms. Delawder fifty percent negligent. Thus, the appellant was entitled to recover $1,250 from the appellees. The appellant moved for additur or, in the alternative, a new trial on the issue of damages. The appellant argued that the damages award was inadequate due to the evidence establishing that the appellant had expended over $12,000 in medical expenses alone. The trial court denied the appellant's motion, finding that the appellees had contested the medical evidence through cross-examination of the appellant's witnesses and that the jury's award "falls short of shocking all sense of justice and fairness." The trial court also found no admission of incompetent evidence, no misconduct by counsel, and no other action during the trial that could have unduly swayed the jury's award. Following the denial of its motion, the appellant commenced this appeal.
 II.
The appellant contends that the trial court erred in denying a motion for new trial and allowing the jury's verdict to stand. Civ.R. 59(A) governs the instances in which a court may grant a new trial and states in part:
 A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
* * *
 (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
* * *
 (6) The judgment is not sustained by the weight of the evidence * * *.
Although the appellant purports to raise four distinct assignments of error, this appeal raises only two issues. The appellant claims that: (1) the damages award was inadequate due to passion or prejudice from the jury, entitling it to a new trial under Civ.R. 59(A)(4); and (2) the damages award is contrary to the weight of the evidence, entitling it to a new trial on damages under Civ.R. 59(A)(6).
The trial court has broad discretion in deciding whether to grant a new trial under either Civ.R. 59(A)(4) or (A)(6) and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion. Pena v. Northeast OhioEmergency Affiliates (1995), 108 Ohio App.3d 96, 103. A court does not abuse its discretion unless its action implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. With this standard in mind, we analyze each ground upon which the appellant argues that a new trial on damages is necessary.
Under Civ.R. 59(A)(4), a trial court may grant a new trial only if the movant demonstrates that the jury verdict was inadequate and that the jury gave its verdict under the influence of passion or prejudice. Rose v. Willis (Dec. 15, 1988), Cuyahoga App. No. 54760, unreported; see, also, Slivkav. C.W. Transport, Inc. (1988), 49 Ohio App.3d 79, 80. In assessing whether the trial court has abused its discretion in overruling a motion for new trial under Civ.R. 59(A)(4), we must consider: (1) the amount of the verdict; (2) whether the jury considered incompetent evidence; (3) any improper conduct by counsel; and (4) any improper conduct which can be said to have influenced the jury. Dillon v. Bundy (1991), 72 Ohio App.3d 767,774; Pena, 108 Ohio App.3d at 94; Lavender v.Justice (Jan. 25, 1994), Pike App. No. 511, unreported. The size of a verdict, by itself, is not conclusive proof of passion or prejudice. Pearson v. Cleveland Acceptance Corp.
(1969), 17 Ohio App.2d 239, 245. However, if a jury verdict is so overwhelmingly disproportionate as to shock reasonable sensibilities, a finding of passion or prejudice is appropriate. Id.; Pena, 108 Ohio App.3d at 104.
In this case, the appellant does not allege any improper conduct during trial or that the jury considered incompetent evidence. Instead, the appellant cites two bases to support an argument that passion or prejudice unduly influenced an inadequate damages award. The appellant alleges: (1) that the jury was unwilling to award adequate damages because they were prejudiced by Ms. Delawder's death; and (2) that the jury verdict was so small as to shock our sense of justice and fairness. Neither contention has merit.
In arguing that the jury was somehow prejudiced against the appellant's case because of Ms. Delawder's death, the appellant argues that the facts showed medical and chiropractic expenses in excess of $12,000 and pain and suffering in addition to that amount. The appellant reasons that the unwillingness of the jury to award more than $2,500 is directly correlated with Ms. Delawder's death. The appellant argues that the jury did not award an amount commensurate with the evidence at trial because of a belief that the award would not go to Ms. Delawder anyway.
We cannot accept the appellant's argument. "Passion or prejudice is a matter of proof, not assertion, and proof is not made from an empty record." Pearson, supra,17 Ohio App.2d at 245. The record shows that Ms. Delawder's death was essentially a non-factor during the trial, with counsel for both parties making clear that the death was unrelated to the August 1995 accident. If anything, there was a possibility of passion or prejudice in the appellant's favor when Ms. Delawder's son testified to his speculative belief that the fall actually contributed to her death. With nothing in the record to substantiate the appellant's argument, we cannot conclude that the jury was moved by passion or prejudice due to the mere fact of Ms. Delawder's death prior to trial.
The appellant also points to the fact that the jury submitted a question asking how much of the medical expenses had already been paid. The appellant argues that this reveals the jury's attempt to nominally compensate the appellant only for outstanding medical expenses. The appellant fails to explain how this constitutes prejudice due to Delawder's death. However, to the extent the appellant relies on this question as "evidence" of passion or prejudice, we reject the assertion. There was no evidence at trial regarding any outstanding medical expenses. Further, the trial court answered the question by instructing the jury that this issue was not before them. We can draw no inferences from the jury's question and find no evidence of passion or prejudice by simply asking it.
The appellant also argues that the jury's verdict was so low as to shock reasonable sensibilities, indicating passion or prejudice. In making such a determination, we must keep in mind that damages are an issue for the jury to decide. Jeanne v.Hawkes Hosp. of Mt. Carmel (1991), 74 Ohio App.3d 246, 258;Litchfield v. Morris (1985), 25 Ohio App.3d 42, 44. The jury is free to accept or reject any or all of a party's damages evidence. Weidner v. Blazic (1994), 98 Ohio App.3d 321, 335. In this case, the jury decided that the appellant suffered $2,500 in damages, despite the appellant's prayer for $12,000 in purported medical expenses and an additional $20,000 for pain and suffering. Regardless of this disparity, we cannot say that the verdict was so grossly low as to shock our sense of fairness. While the appellant may have continued to see doctors and a chiropractor for several months following her fall, there is little dispute that her injuries were largely, if not exclusively, soft tissue injuries. There was no evidence that Delawder suffered any skeletal injury or significant neurological injury. The defense theorized that the extent of Delawder's treatment was unreasonable given the nature of the injury and that, in addition, some of her treatment resulted from pre-existing medical conditions rather than her fall. The evidence is somewhat consistent with the defense's theory and the jury may have accordingly decided that the appellant did not prove that all of the medical and chiropractic expenses were reasonable or attributable to the accident. The jury was charged with sorting out all of these facts and, based on the evidence presented, we cannot say that its verdict was so gross as to shock our sense of justice and fairness. See Iames v.Murphy (1995), 106 Ohio App.3d 627, 631-32.
Even if a damages award was not unduly influenced by passion or prejudice, it may be against the weight of the evidence and entitle a party to a new trial pursuant to Civ.R. 59(A)(6). A new trial should be granted when the jury's award of inadequate damages resulted from its failure to consider an element of damages that an aggrieved party established by uncontroverted evidence. Pena, supra, 108 Ohio App.3d at 104; Baum v.Augenstein (1983), 10 Ohio App.3d 106, 107-08. Because a civil trial is supposed to compensate injury, a jury's failure to consider an element of damages results in an award that denies an aggrieved party the justice deserved. Miller v. Irvin
(1988), 49 Ohio App.3d 96, 98. However, in considering whether a judgment is against the weight of the evidence, we must begin with the presumption that the jury's findings are correct. SeeSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. If a damages verdict is supported by substantial competent and credible evidence, courts must defer to the jury and refrain from granting a new trial. Dillon, supra,72 Ohio App.3d at 773-74; Lavender, supra.
In this case, the appellant complains of the $2,500 damages verdict being contrary to the "uncontroverted evidence" that Ms. Delawder suffered injuries causing her to incur over $12,000 in medical and chiropractic expenses. Contrary to these assertions, however, the appellant's medical testimony was not "uncontroverted." While the appellees did not present their own medical expert, they put the testimony of the appellant's doctors and chiropractor at issue through cross-examination. See Stinson v. England (1994), 69 Ohio St.3d 451, 455-56
(defendant may rebut plaintiff's prima facie case through cross-examination of plaintiff's experts). Thus, notwithstanding the lack of defense experts, the appellees put the appellant's medical evidence in controversy, leaving the determination of damages for the jury to decide. Moreover, the record reveals competent and credible evidence to support the verdict. In this case, the appellant bore the burden of proving whether Ms. Delawder's fall caused the injuries for which she received treatment. See Fiorini v. Whiston (1993), 92 Ohio App.3d 419,427; see, also, Levy v. Coon (1964), 11 Ohio App.2d 200,209 (plaintiff has burden of proving the extent of injuries arising from a particular act of negligence alleged). The jury may have found that the appellant did not meet its burden of proving all the medical and chiropractic expenses to be reasonably necessary and resulting from Ms. Delawder's fall. Several items for which the appellant attempted to collect damages support the jury's conclusion.
Ms. Delawder incurred significant expense for physical therapy associated with pain in her knees. The record contains testimony indicating that Ms. Delawder complained of knee pain in the days and weeks following the fall. However, the record also shows that Ms. Delawder underwent knee replacement surgery a year before the accident. Notes from Dr. Herr indicated that her condition "improved dramatically" just three weeks after the accident and continued to improve after that. Further, x-rays showed no evidence of damage to the knees. One doctor observed in October 1995 that the x-rays of Ms. Delawder's knees showed that "[s]ince the earlier examination of 5-10-95, there is no change." Significantly, the appellant failed to present testimony from Dr. Herr regarding the necessity of her knee treatment in relation to the August 1995 accident. Further, Dr. Willis testified that knee pain was not prominent when he examined Ms. Delawder during her visits in August 1995 and did not refer her to Dr. Herr until October 1995. The jury could have reasonably found that the treatment performed on Ms. Delawder's knees, which cost several hundred dollars, was unrelated to her fall and incident only to her previous knee replacement.
Another key witness in the case was the chiropractor, Dr. Thompson. The appellant claimed almost $7,500 in expenses from Dr. Thompson alone and approximately $1,500 more resulting from his referrals. These expenses included a referral to a neurologist and an MRI occurring ten months after the accident, despite the fact that prior x-rays and other tests revealed no abnormalities attributable to Ms. Delawder's fall. The jury may have concluded that Mr. Thompson's treatment, and his referrals, were excessive or unnecessary, particularly in light of the evidence indicating that Ms. Delawder suffered only a soft tissue injury.
On the record before us, the verdict is consistent with the defense theory that the expenses claimed by the appellant were either excessive or not all related to Ms. Delawder's accident. See Dillon, supra, 72 Ohio App.3d at 774. We are therefore unable to disturb the decision of a jury which had the benefit weighing all of the testimony and evidence it observed firsthand. Accordingly, we overrule each of the appellant's assignments of error. The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Abele, J. Concur in Judgment Opinion4
For the Court
 BY: ________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Prior to trial in this case, Ms. Delawder died of causes unrelated to the facts of this case. The trial court granted a motion to substitute her estate as the plaintiff.