OPINION
{¶ 1} This matter is on appeal of the trial court's denial of appellant, Julia Chamber's, motion for judgment not withstanding the verdict or in the alternative motion for a new trial. Morris Jenkins is the appellee.
 STATEMENT OF FACTS AND CASE {¶ 2} On July 28, 2005, appellant, Julia Chambers (hereinafter "Chambers") re-filed a personal injury action against appellee, Morris Jenkins (hereinafter "Jenkins") for injuries she allegedly sustained as the result of an automobile accident which occurred on December 3, 2001. Chambers alleged that as the result of the accident she sustained various bodily injuries including, but not limited to, injury to her right rotator cuff, as well as soft tissue injuries to her neck, mid and lower back.
 {¶ 3} The case proceeded to trial on November 16, 2006. Appellant never disputed that his actions and/or inaction caused the accident. The issue in dispute was what injuries, if any, were caused by appellee's negligence. In an effort to support her claim, Chambers testified on her own behalf and presented the video taped testimony of her two treating physicians, Dr. Pogorelec and Dr. Shepard. Appellee presented the expert testimony of Dr. Stephens.
 {¶ 4} Chambers testified that the appellee drove into the driver's side of her vehicle and caused the driver's side door to buckle. She stated that, even though she was wearing a seatbelt, during the collision her body was thrown from side to side, her head hit the window, and her left shoulder hit the metal frame on the door, "but not like the right one did." T.86. She further stated that she had a habit of putting her arms out in front of her as if to protect another passenger in the car. T.86. She stated that after *Page 3 
the accident she had a horrific headache and had severe pain shooting through her head, neck and shoulders. T.87.
 {¶ 5} Chambers stated that she was driven by a friend to the hospital emergency room where she was examined by Dr. Prasnal. She testified that Dr. Prasnal took x-rays and recommended that she follow up with her family physician, Dr. Pogorelec.
 {¶ 6} Chambers testified that on December 4, 2001, she was examined by Dr. Pogorelec. She stated that during the examination she was asked to raise her arms but stated that she "couldn't get them up all the way." T. 94. She testified that Dr. Pogorelec recommended therapy three times a week for three to four months. She stated that the therapy was performed at Dr. Pogorelec's office and included, electrical stimulation, time in an aquamed bed and massages. She testified that Dr. Pogorelec also prescribed pain medication and muscle relaxers. She further testified that she "wasn't able to lay down and just go to sleep" like she could before the accident.T.95.
 {¶ 7} Chambers testified that the pain continued in her neck, head and shoulders. She stated that during this time she was unable to work. She testified that at the time of the accident she had two jobs. She worked for Dr. Stewart at Main Family Dental in Alliance and at Caring Hands. She testified that as an employee of Caring Hands for the last ten years, she would go to clients' homes, give them baths, help them out of the bathtub, provide housekeeping services and make daily meals. T.82.
 {¶ 8} She testified that in June of 2002, Dr. Pogorelec referred her to Dr. Shepard for further evaluation. Chambers testified that Dr. Shepard ordered an MRI and *Page 4 
gave her injections in her shoulder for pain. She stated that eventually Dr. Shepard performed surgery to repair a rotator cuff injury.
 {¶ 9} Dr. Pogorelec testified that Chambers has been a patient in his office since 1997. He testified to her patient history as follows: In September of 1997, Chambers was treated for complaints of mid back pain on her right side. Transcript of video deposition at page 61, (herein after TP.). In July of 1998, Chambers was
treated for complaints of migraine headaches and pain in the cervical, thoracic region. On February 11, 1999, Chambers was treated for complaints of back pain, migraines and neck pain. On March 23, 1999, Chambers was treated for anxiety attacks and prescribed Xanax. On March 30, 1999, Chambers was treated for complaints of left hand numbness upon waking and lower back pain. On July 15, 1999, Chamber was treated for complaints of bilateral shoulder pain, sore muscles and fatigue and was diagnosed with acute fibromialgia which he testified causes migratory pain throughout the body. TP.61. On August 12, 1999, Chambers was treated for complaints of left shoulder and neck pain.TP.61. On November 6, 2001, Chambers was treated for sciatic pain in the right hip and leg.TP.61.
 {¶ 10} Dr. Pogorelec testified that on December 4, 2001, a day after the accident, he examined Chambers. He stated that he reviewed records from the hospital emergency room which indicated that on December 3, 2001, immediately after the accident, Chambers exhibited a "normal range of motion [in her] wrists, shoulders, elbow, knee, hips, and ankle." He stated that the emergency room records further indicated that Chambers was "without any acute joint swelling." TP.80. *Page 5 
 {¶ 11} Dr. Pogorelec testified that during his examination on December 4, 2001, he noted that Chamber's range of motion was "normal" and her neurological exam was "normal".TP.90. He further testified that during her follow-up exams on December 18, 2001, and February 5, 2002, Chambers did not indicate any right shoulder range of motion restriction, acute pain in the right shoulder or difficulty sleeping. TP.95.
 {¶ 12} Dr. Pogorelec testified that on February 28, 2002, Chambers came to his office stating that "since returning to work [she had] neck, shoulder, mid, [and] low back pain". He admitted that her complaints were not specific to the right shoulder only. TP.96.
 {¶ 13} Dr. Pogorelec testified that on March 14, 2002, he examined Chambers and his diagnosis continued to be cervical thoracic sprain or strain and myofacial pain syndrome. He further testified that she did not complain of restriction of motion and acute pain in the rightshoulder.TP.98. He testified that it was not until May 5, 2002, that Chambers made specific complaints regarding her right shoulder which then led to the rotator cuff surgery.TP.99.
 {¶ 14} Dr. Shepard testified that he is an orthopedic surgeon with Spectrum Orthopedics. He testified that he has a particular expertise in shoulder and knee conditions. He testified that he first saw Chambers six months after the accident on June 25, 2002. Transcript of Shepard Deposition at page 12, (hereinafter TS.). He testified that upon examination she exhibited "pain and stiffness in her spine and some pain on cervical motions". TS.13. He testified that "when examining her shoulder, she had a painful range of motion, called impingement signs, [which] indicates irritation in the tendons around the shoulder called the rotator cuff.TS.13. He also testified that *Page 6 
"[s]he also had a lot of tenderness on what's called the acromioclavicular joint, which is a small joint on top of the shoulder." TS.14. He stated that Chambers informed him that she had been having pain in her neck and shoulders since the time of theaccident.TS.19. He testified that in September of 2002, after conservative treatments were unsuccessful, he decided to perform surgery on Chamber's shoulder.TS.21. The rotator cuff surgery was performed on October 28, 2002. TS.22.
 {¶ 15} Dr. Shepard testified that, during surgery and upon examination of the shoulder joint, he found Chambers to have some tearing of the cartilage inside her shoulder and a little detachment in the front of the shoulder. He also testified that upon examination of the rotator cuff he found a partial tear of the tendon at the top of the shoulder. TS.23. He testified that, incidentally, he removed a benign tumor from her shoulder.TS.26.
 {¶ 16} Dr. Shepard testified that in his professional opinion, based largely on the history of symptoms provided by Chambers, the labral tearing, the rotator cuff tear and the sprain in the acromioclavicular joint were caused by the automobile accident.TS.28 and 35. He testified that post operatively she continued to complain of pain in hershoulder.TS.30. He further testified that she may need ongoing medical care or treatment.TS.35.
 {¶ 17} On cross-examination Dr. Shepard testified that Chambers suffered from identical symptoms in her left shoulder (i.e. tendonitis, impingement syndrome). TS 38. He testified that tendonitis does not have to be associated with an acute trauma but can develop over time because of repetitive or overuse problems. TS.42. He further testified that his professional opinion is based, in large part, on the history of her problems since *Page 7 
the accident and that he had only recently reviewed the notes from Dr. Pogorelec and was not aware that, originally, there was no pain in the right shoulder indicated. He further testified that a partial tear is typically caused by heavy lifting, traumatic injury or the degenerative process associated with aging. T.53. Finally he testified that Chambers is going through the same degenerative process in her left shoulder as she did in her right shoulder. TS.54.
 {¶ 18} Dr. Stephens testified that she is an orthopedic surgeon. She testified that orthopedic surgery is a subspecialty of medicine that focuses and concentrates on diseases and treatment of the musculoskeletal system, i.e. the bones, the joints, the muscles and the ligaments. (Transcript of videotaped deposition, dated November 10, 2006, at page 9, hereinafter T. Stephens). She testified that she had an opportunity to examine Chambers. She testified that it is not unusual for someone like Dr. Shepard to take a history from a patient and believe them at their word in order to formulate an opinion. T. Stephens 15. She testified that the medical history as provided in the emergency room records and Dr. Pogorelec's records was not consistent with the history provided by Chambers to Dr. Shepard. T. Stephens 17-33. She testified that there is a period of approximately five months where Chambers does not complain of right shoulder pain, at all, which is inconsistent with "a rotator cuff tear or a tear of any muscular or tendons or capsule or anything in the shoulder." T. Stephens 33-34. Dr. Stephens testified that based on a reasonable degree of medical certainty Chambers' right shoulder surgery "addressed preexisting arthritic conditions that were present in her shoulder before the motor vehicle accident." T. Stephens 36. She testified, "my opinion is that the shoulder surgery and subsequent treatment of [Chambers'] surgery *Page 8 
and right shoulder was not related to the motor vehicle accident." T. Stephens 36. Dr. Stephens further testified that she believed Chambers did suffer cervical strain, bilateral shoulder strain and trapezius muscle strain in the automobile accident which would require care and treatment for three to six months. T. Stephens 37-38, 46. She testified that Chambers did not suffer a permanent injury as a result of the accident. T. Stephens 50.
 {¶ 19} On November 16, 2006, the jury found appellee negligent and awarded the appellant zero dollars in damages.
 {¶ 20} On November 30, 2006, appellant filed a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50, or, in the alternative, a motion for new trial pursuant to Civ.R.59. In the motion, appellant argued that the damages award was inadequate, not supported by the weight of the evidence and appeared to have been given under the influence of passion or prejudice. On January 2, 2007, appellee filed a response in opposition. The motion was scheduled for oral hearing on April 2, 2007.
 {¶ 21} On April 16, 2007, after the oral hearing, the trial court denied appellant's motions. In the judgment entry of the denial the trial court stated as follows: "The court finds from a review of the deposition of plaintiffs two expert witnesses and defendant's one expert witness that reasonable minds could come to different conclusions as to the nature of plaintiff's alleged injuries. In the absence of jury interrogatories, this court is unable to determine what expert testimony the jury accepted or rejected in reaching the verdict, and as we know, the trial court does not weigh the evidence nor question the credibility of witnesses when ruling on a motion for judgment notwithstanding the verdict. * * * The Court finds that in order to grant a motion for new trial, the Court must *Page 9 
find one of the grounds enumerated in Civ.R.59 or in the sound discretion of the court for good cause shown determine a basis for a new trial, The Court does not find any basis for granting the plaintiffs motion for a new trial." It is from this judgment that appellant seeks to appeal setting forth the following assignment of error:
 {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF IN FAILING TO GRANT APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND IN THE ALTERNATIVE APPELLANT'S MOTION FOR NEW TRIAL."
 {¶ 23} In appellant's assignment of error she argues that based upon the evidence presented at trial, reasonable minds could draw but one conclusion and that is that the appellant was entitled to money judgment for her injuries and damages sustained as a direct and proximate result of appellee's negligence. Specifically appellant argues that appellee conceded negligence, therefore the only issue for the jury was what, if any injuries, resulted from the negligence.
 {¶ 24} In support, appellant argues that appellee's own expert stated that appellant suffered some injuries as a result of the accident, therefore the jury was only left to decide whether or not the appellant suffered an additional injury to her shoulder which required surgery and further treatment.
 {¶ 25} Essentially appellant argues that the jury's award of zero damages was inadequate and cannot be reconciled with the evidence of injury and that the trial court should have granted appellee's motion for a judgment notwithstanding the verdict and/or motion for new trial. We disagree. *Page 10 
 {¶ 26} We shall initially discuss the pertinent law regarding the grant or denial of a judgment notwithstanding a verdict and motion for new trial.
 {¶ 27} Civ. R. 50(B) governs motions for judgment notwithstanding the verdict. It provides:
 {¶ 28} "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."
 {¶ 29} When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. Ronske v. Heil Co., Stark App. No. 2006-CA-00168, See also, Pariseau v. Wedge Products, Inc. (1988),36 Ohio St. 3d 124, 127, 522 N.E.2d 511. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict."Krauss v. Streamo, Stark App. No. 2001CA00341, 2002-Ohio-4715, paragraph 14; see also, McLeod v. Mt. Sinai Medical *Page 11 Center (2006), 166 Ohio App. 3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139, 876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. Posin v. A .B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275, 344 N.E.2d 334. See, also, Civ.R. 50(B); and Osler v.Lorain (1986), 28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. Osler, supra.
 {¶ 30} Appellate review of a ruling on a motion for judgment notwithstanding the verdict is de novo, Midwest Energy Consultants,L.L.C. v. Utility Pipeline, Ltd., Stark App. No. 2006CA00048,2006-Ohio-6232; Ronske v. Heil, Supra.
 {¶ 31} Civ. R. 59 governs motions for new trial. It states in pertinent part:
 {¶ 32} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 33} "Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 {¶ 34} "Misconduct of the jury or prevailing party;
 {¶ 35} "Accident or surprise which ordinary prudence could not have guarded against;
 {¶ 36} "Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; *Page 12 
 {¶ 37} "Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 {¶ 38} "The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 39} "The judgment is contrary to law;
 {¶ 40} "Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;
 {¶ 41} "Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 42} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown. * * *"
 {¶ 43} In this case the appellant requested a new trial pursuant to Civ.R.59 (A) (4) arguing that the jury awarded excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice.
 {¶ 44} In order to determine whether passion or prejudice affected the jury's damage award the appellate court must consider: (1) the amount of the verdict and (2) whether the jury considered improper evidence, improper argument by counsel, or other inappropriate conduct which had an influence on the jury. Dillon, 72 Ohio App.3d at 774,596 N.E.2d at 505. To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities.Pena v. Northeast Ohio Emergency Affiliates, Inc. (1995),108 Ohio App. 3d 96, 104, 670 N.E.2d 268; Jeanne v. Hawkes Hosp. of Mt. Carmel (1991),74 Ohio App.3d 246, 257, 598 N.E.2d 1174, 1181; *Page 13 Pearson v. Cleveland Acceptance Corp. (1969), 17 Ohio App.2d 239, 245,246 N.E.2d 602, 606. There must be something contained in the record to which the complaining party can point that "wrongfully inflamed the sensibilities of the jury." Shoemaker v. Crawford (1991),78 Ohio App. 3d 53, 65, 603 N.E.2d 1114.The mere size of the verdict is insufficient to establish proof of passion or prejudice. Jeanne,74 Ohio App.3d at 257, 598 N.E.2d at 1181; Pearson, 17 Ohio App.2d at 245,46 O.O.2d at 415, 246 N.E.2d at 606.
 {¶ 45} A motion for a new trial is reviewed differently at the appellate level than at the trial level, see, e.g., Porach v. SpinCycle, LLC, Cuyahoga App. No. 87067, 2006-Ohio-5004. A reviewing court must view the evidence in a light most favorable to the trial court's decision, rather than in favor of the nonmoving party, Jenkins v.Krieger (1981), 67 Ohio St.2d 314, 423 N.E.2d 856. This court does not weigh the evidence in reviewing a decision on a motion for a new trial,Mannion v. Sandel (2001), 91 Ohio St.3d 318, 744 N.E.2d 759.
 {¶ 46} Furthermore, where a trial court is authorized to grant or deny a motion for new trial for a reason which requires the exercise of sound discretion, the trial court's decision may only be reversed upon a showing of an abuse of discretion. Mannion v. Sandel (2001),91 Ohio St.3d 318, 744 N.E.2d 759; Sharp v. Norfolk Western RailwayCompany, 72 Ohio St.3d 307, 1995-Ohio-224, 649 N.E.2d 1219. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. *Page 14 
 {¶ 47} In this case, Appellant contends that this Court in Wilson v.North Canton, Stark App. No. CA-8183, (decided January 7, 1991), unreported, required the jury to award some damages. This case is distinguishable from Wilson. In Wilson, the victim, a two year old child, was injured when a backboard and hoop fell over on him. The backboard had been in storage and was leaning against a fence. The child's injuries required extensive medical treatment. Due to the resulting tissue damage, the child had a permanent hypertrophic scar over his left cheekbone that was thick and several inches long. After a presentation of evidence, the jury found the defendant negligent but awarded damages in the amount of one dollar. The Plaintiffs motion for a judgment notwithstanding the verdict and/or new trial was denied. On appeal this Court held that uncontradicted testimony established that as the result of the defendant's negligence, the child victim had suffered an injury that left him with a significant and permanent deformity. The court further held that the inadequate award was so grossly disproportionate to the uncontradicted evidence of the severity and permanency of the injury that a de minimus award of one dollar could only have been the result of passion or prejudice.
 {¶ 48} In this case, the testimony regarding how appellant's injuries occurred was contradicted. First and foremost, the testimony of the appellant and the notes of the medical professionals were in contradiction. Appellant claimed to have immediately suffered pain, inferior range of motion and sleeplessness as a result of the accident. However, the medical history of the emergency room records and of Dr. Pogorelec established that immediately after the injury until two to three months later, appellant's physical complaints focused on neck pain and bilateral shoulder pain but did not focus *Page 15 
on inferior range of motion or severe pain in the right shoulder and sleeplessness. The evidence also established that the appellant had been suffering from the same or similar soft tissue symptoms beginning in 1997 and 1998 and was diagnosed with fibromialgia in 1999. Furthermore, no evidence was presented to differentiate between the ongoing symptoms and the possible aggravation of these pre-existing conditions. Additionally, the appellee's expert testified that the surgery to appellant's right shoulder was not proximately caused by the accident. Finally, the award is not grossly disproportionate to the evidence as to shock reasonable sensibilities, and there is no evidence to suggest that the jury was influenced by passion or prejudice.
 {¶ 49} For these reasons we find that the trial court did not err as a matter of law or abuse its discretion in denying appellant's motions for judgment notwithstanding the verdict and new trial.
 {¶ 50} The judgment of the Stark County Court of Common Pleas is hereby affirmed.
 By: Edwards, J. Gwin, P.J. and Farmer, J. concur *Page 16