## SKIDOO CO v GARDNER

Ohio Appeals, 2nd Dist, Franklin Co

No 2574. Decided Oct 16, 1935

Gumble & Gumble, Columbus, for plaintiff in error.

J. A. Godown, Columbus, for defendant in error.

**OPINION**

By HORNBECK, J.

We have set forth only certain subject matter developed in the record because it relates particularly to the claims of error asserted in the petition in error, which are: (1) That the plaintiff was chargeable with contributory negligence as a matter of law. (2) That the court erred in permitting the jury to make special observation of the scar on plaintiff's forehead and (3) That the court erred in refusing to accept defendant's Exhibit 1, the proof of claim of plaintiff on the Citizen's Insurance policy.

(1) It is the claim of the company that the plaintiff was contributorily negligent in failing to see and know the approach of its automobile in time to have avoided the injury. Two cases are cited and commented upon: Gliemme v Balog, 18 Abs, (November 9, 1934), page 163, the City Railway Company v Friezel, 19 Abs, (February 14, 1935), page 97.

In the former case Balog left the south curb of Wilson Avenue to move across to the north of the center of the street to take a westbound street car then approaching. As he left the curb he looked to the west and observed the oncoming automobile of Gliemme some fifty or sixty feet away, which came on and struck Balog after the automobile had reached a place in the westbound tracks on the wrong side of the automobilist's road. A verdict was rendered and judgment entered for Balog. The Court of Appeals of the Seventh District, Judge Roberts writing the opinion, reviewed the case. The court refused to say as a matter of law that Balog was contributorily negligent and this would seem to be the only course that could have been pursued, in view of the first proposition of the syllabus in Trentman v Cox, 118 Oh St 247, where the Supreme Court has said that the failure of the plaintiff after he left the curb to look a second time for an approaching automobile which as he left the curb was sixty-five or eighty feet away was not contributory negligence as a matter of law. The court, however, did hold that the verdict in the Balog case was manifestly against the weight of the evidence.

There are two propositions of the syllabus, the second of which states the ground of reversal:

"1. It is the duty of a pedestrian before attempting to cross a much traveled street to look to determine whether any automobiles are approaching, and whether he can reasonably presume that it is safe to cross the street.

"2. In an action for injuries sustained when struck by an automobile, a verdict for the plaintiff, on evidence showing that he attempted to catch a street car by hurriedly crossing the street in front of approaching traffic in dangerous proximity, which he saw, or should have seen, is manifestly against the weight of evidence upon the proposition of contributory negligence."

We are in accord with both quoted propositions of law. There is this marked difference in the facts under consideration in the cited case and those in the instant case. The court in the cited case held that the plaintiff saw and knew (or should have known) the proximity of the oncoming automobile, and that he did not have time to proceed into the street safely. In the instant case the plaintiff did not see, nor can it be said that he should have seen or known of the oncoming automobile, which in probability was back of the double parked car which was to the west of the plaintiff as he looked a second time after he had moved seven feet into Spruce Street.

It can not be said as a matter of law that the plaintiff was required to look a third time as he moved across. He did look a third time, but then he had reached a place beyond the center of the street. When he looked a second time to his west he had but approximately twelve feet according to the testimony (15 feet according to the plat attached to plaintiff's brief), to move until he had gotten over into a path which ordinarily would not be used by automobiles moving to the west.

There is on the record a factual question whether or not the plaintiff exercised ordinary care in failing to look a third time before he reached the center of Spruce Street as he crossed it, but it would be going to limits which no case has yet approached to say that as a matter of law he

must look again after he had moved further out into Spruce Street when he had looked to the west from a point seven feet from the curb. Is it not a reasonable factual inference to say that the plaintiff had reason to expect that if a driver would come out from behind the double parked automobile he would be cautious and drive slowly because he was compelled to get over onto plaintiff's side of the road, where he had reason to believe, until he knew the contrary, that no automobile would be moving from the west. Such a situation must be observed in the light of practical experience. Pedestrians must of necessity cross streets in which automobiles are continually being operated. If a pedestrian can not cross a street until he knows that no automobile may be approaching, then he will never get across. It is likewise true that an automobilist must at times move over into the path which is intended for traffic moving in the opposite direction, but when and if he does he should use extra caution to bring his car under control, so that he will be prepared to slacken speed or stop if necessary to avoid striking automobiles or pedestrians who have a better right to that side of the street than he. It is not negligence for a plaintiff to assume that a defendant will exercise care. Trentman v Cox, supra. Ordinary care does not require a person to anticipate another's negligence. 29 O. Jur., 547 and many cases there cited.

The situation with which the plaintiff was confronted is well stated by Judge Spear at page 208 of Cincinnati Street Railway Company v Snell, 54 Oh St 197:

"We suppose the rule for street cars is the same as for other vehicles, and if the footman is required, in a crowded thoroughfare, to look up and down and wait until all possibility of collision is past, it would be like sitting on the bank until the street should run by, and there would be but few hours in the busy part of the day when it would be practicable to cross."

It may be fairly inferred in this case that defendant's driver started out from behind the double parked car and without appreciably slackening his speed moved over and into his wrong side of the road.

The facts in the Friezell case, supra, are familiar to this court, it having been decided in the district, Judge Barnes writing the opinion in February of this year. It is not necessary to re-state the very complicated set of facts in the case. Friezell's disabled automobile was headed east in the eastbound car tracks of East Fifth Street in the City of Dayton. He was unable to get his car started and he had used a crank to start it. Being unable to get it to move he concluded to cross the street and in so doing walked over and into the line of a westbound street car. Friezell claimed that as he threw his crank on the left running board of his car he saw a traffic light over his shoulder giving him the right to move across the street. Friezell was not at a cross street, the traffic light was some distance away from him, and although it may have been in his favor a street car might have been through it and moving westerly before the light changed. We said in this situation that Friezell had not exercised ordinary care in moving into proximity to the street car tracks without further looking to see if a car was approaching. A mere statement of the difference in the facts illustrates that there is no inconsistency between the holding in the Friezell case and the determination of the trial court in this case.

See 3310-36 GC, provides that:

"Pedestrians shall not step into or upon a public road or highway without looking in both directions to see what is approaching."

This statutory obligation has been enjoined upon pedestrians, but thereafter their obligation is to exercise ordinary care under all the circumstances. Valentine v Pavilonis, 27 Oh Ap 26 (6 Abs 359, 462); Trentman v Cox, supra, Ohbrinacher, etc. v Bennett, 7 Abs 296.

(2) Did the court err in permitting the jury to specifically observe the scar on the forehead of plaintiff? We think not. The trial court was correct in permitting the jury to observe the injured part, for the reason stated, namely, that it had some weight in proving the force of the collision and it was also admissible as it tended to corroborate the claim of the plaintiff that he had suffered pain, especially in connection with the testimony of the plaintiff and his witnesses as to his suffering. The purpose of the testimony was limited by counsel when offered. Nothing was claimed for disfigurement and the court said nothing to the jury which would permit it to include it as an element of damage. There was no error in admitting the testimony and there was no error of commission, the court saying nothing about the scar as a disfigurement in the general charge. Had counsel desired that the jury be specifically cau-

tioned that it could not consider facial disfigurement as an element constituting damages it would have been proper to have requested the court to specially so charge.

(3) Did the court err in refusing to admit the proof of claim of plaintiff under his policy of insurance with the Citizen?

The exhibit was not properly identified which was necessary, as it was to be used to establish a statement claimed to have been made by the plaintiff.

The sole purpose in offering the exhibit, according to the claim of the brief, was to impeach the plaintiff in his statement respecting the period of his total disability. In our judgment it had no such effect. His answer as a witness on the trial, touching the date of the termination of his disability was not exact, nor did it purport to be. He freely admitted that he had made a claim for loss to the insurance company, but he did not deny that he had fixed the date of termination of disability in the claim differently than at the trial; his answer was that he did not when testifying remember the date—that is to say that either he did not remember the date when his permanent disability ceased or he did not remember the date stated in the proof of claim. He was not given any opportunity to answer the question whether or not he had made a statement to the insurance company at variance with his statement as a witness. This statement was available to counsel and could have been employed in questioning the witness.

"A witness may be impeached by showing contradictory statement made prior to the trial. Such prior statement can not be admitted until the foundation for impeachment is first laid, that is the party must first ask the witness whether he made such statement, to a certain person at a certain time and place, advising the witness what the statement was, at least in substance and fixing the person, time and place were made as definitely as possible." Hornbeck & Adams Trial and Appellate Practice, Page 108 and Ohio cases there cited.

Having carefully considered all of the claims urged by the defendant, we find no prejudicial error resulting in the trial of the cause.

The judgment will, therefore, be affirmed.

BARNES, PJ, and BODEY, J, concur.