DECISION AND JUDGMENT ENTRY
Suzanna and Loren Krannitz appeal the Pike County Common Pleas Court's denial of their motions in limine, for a judgment notwithstanding the verdict, and for a new trial. They assign the following errors:
 THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE PHOTOGRAPHS OF PLAINTIFFS' VEHICLE FROM EVIDENCE.
 THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR A NEW TRIAL ON THE ISSUE OF DAMAGES.
Finding no merit in any of appellants' assigned errors, we affirm the trial court's judgment.
 I.
Michael Harris was operating his vehicle in October 1996 when he rear-ended Mrs. Krannitz's stopped vehicle. Mr. and Mrs. Krannitz filed a complaint against Mr. Harris alleging negligence and loss of consortium. At trial, Mr. Harris admitted that he was at fault. He testified that he applied his brakes, slid approximately 50 feet and hit Mrs. Krannitz's vehicle while he was traveling approximately five miles per hour.
The trial court granted appellants' motion for a directed verdict on the issue of negligence. The court instructed the jury that they need only determine whether Mr. Harris caused Mrs. Krannitz's injuries and what, if any, damages she and Mr. Krannitz were entitled to. The jury returned a verdict in favor of Mr. Harris.
Following the return of the jury verdict, appellants filed a motion for judgment notwithstanding the verdict under Civ.R. 50(B) and for a new trial on the issue of damages only under Civ.R. 59(A)(4),(6), and (7). The court denied both motions and a timely appeal followed.
 II.
In their first assignment of error, appellants assert that the trial court erred in denying their motion in limine to exclude photographs of Mrs. Krannitz's vehicle. The two photographs appellants contend should not have been admitted depict the bumper of Mrs. Krannitz's vehicle and the underside of the bumper. Both photos depict little or no damage despite the collision.
Appellants argue that the photographs should not have been admitted because they inaccurately suggest that no damage was sustained by their vehicle during the collision, when in actuality the driver's seat was locked in a back position, the door hinge was broken, and the rearview mirror was knocked off. They submit that the photographs are not relevant because they don't show the damage and, even if relevant, are unduly prejudicial under Evid.R. 403(A) and should not have been admitted.
In a personal injury case where liability is already determined, "the only remaining issue is the nature and extent of injury as determinative of the amount of damages to be allowed." Cleveland Rwy. Co. v. Kozlowski
(1934), 128 Ohio St. 445, paragraph one of the syllabus. Evidence of the force of impact is generally admissible as bearing on the extent of such injuries. Miller v. Irvin (1988), 49 Ohio App.3d 96, 98; Johnson v.Knipp (1973), 36 Ohio App.2d 218, 222. Therefore, in a personal injury action there is no error in allowing a jury to review evidence that has some weight in proving force of collision and bears a relationship to the claimant's allegation of injury. Armbrister v. Thomas (Nov. 21, 1991), Scioto App. No. 90CA1958, unreported, citing Skidoo Co. v. Gardner (C.A. 10, 1935), 20 Ohio Law Abs. 107, 111. Generally, a photograph correctly representing the condition of an automobile after an accident is admissible into evidence. Luebbering v. Whitaker (1919), 10 Ohio App. 365,368-369.
Here, Mr. Krannitz testified that the photographs were accurate depictions of the vehicle's back bumper, which was struck by appellee's vehicle. This evidence was clearly introduced to show that there was little or no damage to the vehicle resulting from the collision in which Mrs. Krannitz claims to have sustained injuries. This evidence is clearly probative of the force of the impact and consequently bore some relationship to Mrs. Krannitz's claimed injuries. Moreover, Dr. Patrick Ball, one of Mrs. Krannitz's treating physicians, testified that Mrs. Krannitz told him the vehicle had been "demolished" during the accident. Dr. Ball further indicated that the nature and severity of the impact is important to his diagnosis. If there was only a small dent on the bumper, he would not anticipate much injury.
The admission of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence cannot be reversed absent a showing of an abuse of that discretion. Rigby v.Lake Cty. (1991), 58 Ohio St.3d 269, 271; see, also, State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. To demonstrate an abuse of discretion, an appellant must show that the trial court's ruling was arbitrary, unreasonable or unconscionable. See WilmingtonSteel Products, Inc. v. Cleveland Elec. Illuminating Co. (1991),60 Ohio St.3d 120, 122. The trial court did not abuse its discretion in finding that the photos were relevant.
Nor do we believe that the trial court abused its discretion under Evid.R. 403(A) which states:
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
This rule by its very terms favors the admissibility of relevant evidence. Appellants have not carried their burden of establishing that the probative value, i.e. relevancy, of introducing the photographs wassubstantially outweighed by unfair prejudice or confusion. The jury heard Mr. and Mrs. Krannitz as well as their son, Christopher Krannitz, testify regarding the interior damage to the vehicle. Nothing prevented appellants from taking and introducing photographs depicting this damage. Furthermore, in light of Mrs. Krannitz's statement to her doctor that the car was demolished, we see no unfair prejudice here. Accordingly, we overrule appellants' first assignment of error.
 III.
In their second assignment of error, appellants argue that the trial court erred in denying their motion for a judgment notwithstanding the verdict under Civ.R. 50(B). Appellants submit that Dr. Walter Hauser, appellee's expert witness, acknowledged that Mrs. Krannitz sustained a sprain or a strain from the collision and, based on this testimony, there can be no dispute that her injuries resulted from the accident; therefore, the jury ignored the medical evidence in returning a verdict in favor of appellee. Appellants further argue that the jury ignored the trial court's ruling that appellee was guilty of negligence when it returned a general verdict form in favor of appellee.
In considering a motion for judgment notwithstanding the verdict under Civ.R. 50(B), a trial court applies the same test as it does in evaluating a motion for a directed verdict under Civ.R. 50(A). Osler v.Lorain (1986), 28 Ohio St.3d 345, 347; Ford v. Tandy Transp., Inc.
(1993), 86 Ohio App.3d 364, 384. The court must construe the evidence adduced at trial in the light most favorable to the nonmoving party.Osler at 347. The court must deny the motion if, upon consideration of all the evidence, there exists substantial evidence to support the non-movant's position and upon which reasonable minds might differ. Id.
Although it is necessary to review and consider evidence, a motion for judgment notwithstanding the verdict presents a question of law and not one of fact. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph three of the syllabus; Whitenight v. Dominique (1995), 102 Ohio App.3d 769, 772. We must not pass on the weight or credibility of evidence or testimony when deciding a Civ.R. 50 motion. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119. The mere fact that testimony is uncontroverted does not necessarily require a jury to accept the evidence if the jury found that the testimony was not credible. GTE North, Inc. v. Carr
(1993), 84 Ohio App.3d 776, 780, at fn. 3. A jury is free to believe all, part, or none of the testimony of any witness who appeared before it. Rogers v. Hill (1998), 124 Ohio App.3d 468, 470. Our review of the trial court's ruling on a motion for judgment notwithstanding the verdict is de novo. See Ford, supra, at 379. In essence, if there is a rational basis for the jury's verdict, a court must not intercede.
The fact that the jury issued a general verdict in favor of appellee does not mean that the jury ignored the court's instruction regarding appellee's negligence. Rather, it indicates that the jury found that appellee did not cause Mrs. Krannitz's injuries or did not believe that Mrs. Krannitz was actually injured. After carefully reviewing the trial transcript, we conclude that there is a rational basis in the record to support the jury's verdict in favor of appellee.
Dr. Stephen Kincaid testified that he is a chiropractor who treated Mrs. Krannitz both before and after her accident in October 1996. He examined Mrs. Krannitz approximately two days after the accident and found acute neck pain, rigidity and spasms. He diagnosed her as having a cervical sprain or strain, which is often noted as a whiplash-type injury. A few days later, Dr. Kincaid examined Mrs. Krannitz again and took X-rays. Upon review of the X-rays, Dr. Kincaid found moderate loss of normal cervical curve and misalignments at the C1, C6 and C7 vertebrae.
Dr. Kincaid continued treating Mrs. Krannitz for these problems on a regular basis for several years. He testified that she had severe headaches and neck pain as well as pain radiating into her arms and shoulders. Dr. Kincaid used various therapies to treat these problems. Mrs. Krannitz also had an MRI which was interpreted by two different doctors. The first doctor's report indicated that the MRI was normal. However, the second doctor reported that there was a bulging disc at C5, C6. In Dr. Kincaid's opinion, the disc bulge most likely resulted from the 1996 accident.
Dr. Kincaid testified that the first time he saw Mrs. Krannitz prior to the accident was in September 1993 due to a fall. She had scapular pain and shoulder difficulties. In January 1996, he saw her again because of her complaints of left hip to left foot pain, headaches and neck pain. From August to October 1996, he saw her for some neck pains. Dr. Kincaid testified that the problems he saw Mrs. Krannitz for before the accident were different from her current complaints because the symptoms after the accident were more severe than before; prior to the accident Mrs. Krannitz had fewer spasms and headaches and was more mobile. Dr. Kincaid stated that he was sure that the accident had aggravated some of Mrs. Krannitz's previous conditions.
Dr. Kincaid testified that he last saw Mrs. Krannitz on October 16, 1998 but she was still experiencing problems and was seeing Dr. Ball at that time. He also testified that Mrs. Krannitz will have some permanent residual problems resulting from the accident. She will be limited in certain activities, will likely experience some degenerative changes, and will have pain.
On cross-examination, Dr. Kincaid testified that when he first examined Mrs. Krannitz in 1993, he found problems at cervical vertebrae C1, C6 and C7, as well as thoracic vertebrae T4 and T5. He next saw her in February 1994 and her complaints were at C6, C7, T3 and T4. She also complained of a stiff neck and shoulder. A week later, Dr. Kincaid found problems at C2, C6 and C7. In September 1994, September 1995, and October 1995, Dr. Kincaid treated Mrs. Krannitz for her left shoulder and hip. Her next treatment was in January 1996 when she was again treated for C1, C6 and C7 and complained about headaches, which Dr. Kincaid related to misalignment in her neck. In March 1996, Mrs. Krannitz was treated for C1, C6, C7 and T1. She visited him twice in August for problems with C1, C2 and C7. In September 1996, she was treated for C1 and her muscle tone was rigid. Two days prior to the accident, Mrs. Krannitz was treated for C1, C7 and T1 and Dr. Kincaid noticed that the muscle tone in her neck was rigid. When Dr. Kincaid treated Mrs. Krannitz shortly after the accident, he found abnormalities at C1, C6, C7, T4 and T5. Dr. Kincaid also found muscle spasms and noted that her neck was rigid.
Dr. Kincaid acknowledged on cross-examination that he had no way of knowing if the bulging disc was present prior to the accident because he had not previously ordered a MRI. He testified that it was possible that the bulge occurred at the time of an earlier accident in the 1970s or was caused by natural wear and tear from daily living.
Dr. Kincaid testified that all the treatments he provided to Mrs. Krannitz after the accident were for the injury from the accident; however, a minimal part of the treatment may have been due to the substantial aggravation of prior injuries. Dr. Kincaid testified that it would be impossible for him to distinguish the treatment for the pre-existing conditions from the treatment for the automobile accident.
Dr. Patrick Ball, Mrs. Krannitz's family physician, also testified on her behalf. Dr. Ball saw Mrs. Krannitz about three weeks after the accident. He found a muscle spasm in her neck and impaired motion. He also found that vertebrae C3 and C6 were out of their normal position. Dr. Ball testified that you can tell if an injury is old or new by feeling the tissues. He determined that Mrs. Krannitz's injuries felt fresh and had occurred within the last couple months. Dr. Ball diagnosed Mrs. Krannitz with acute cervical strain.
Dr. Ball testified that he examined the MRI and saw the bulging disc at C5, C6 and it was highly probable that the bulging disc resulted from the accident. Dr. Ball also testified that he believes that Mrs. Krannitz's injuries are permanent. He does not think that the injury from the 1970's would have anything to do with the symptoms now.
On cross-examination, Dr. Ball admitted that there is no way to determine for sure if the bulge is from the accident in 1996. He also testified that Mrs. Krannitz told him that the vehicle was demolished and that the nature and severity of the impact is important to his diagnosis. If there was only a small dent on the bumper, he would not anticipate much injury. Dr. Ball testified that Mrs. Krannitz never told him that she'd experienced headaches before the accident or that she had treated with Dr. Kincaid for years prior to the accident.
Mrs. Krannitz testified that after the accident she began experiencing problems with her neck and headaches. She now has chronic pain which varies from day to day and is aggravated when she does certain things, such as take long car trips. Mrs. Krannitz admitted that she had a problem with her neck before the accident but testified that before the accident she could get her neck adjusted and be fine whereas she now has consistent pain. Mrs. Krannitz acknowledged that she fractured her arm and collar bone in a car accident in the 1970's.
On cross-examination, Mrs. Krannitz admitted that at her deposition she testified that her mother and her aunts recommended Dr. Kincaid to her. She also admitted that she previously testified that she didn't believe she had ever received treatment from Dr. Kincaid prior to the accident but may have seen him for lower back adjustments. Mrs. Krannitz acknowledged that when she looked at her medical records, she saw that she had received a few neck adjustments from Dr. Kincaid over the years and had seen him only a day or two prior to the accident. Mrs. Krannitz also admitted that at her deposition she stated that she had sprained her arm in the previous accident whereas in one of Dr. Kincaid's intake sheets she indicated her right arm had been broken in three places and her collarbone had been broken.
Dr. Walter Hauser, an orthopedic surgeon, testified in appellee's case-in-chief. During his examination, in November 1997, Mrs. Krannitz stated that she'd seen Dr. Kincaid prior to the accident, mostly for lower back pains, but wasn't having any symptoms with her neck at the time of the accident. Dr. Hauser testified that Mrs. Krannitz didn't seem to be having much pain when he examined her. He found no objective signs of neck injury. There were some subjective findings which occurred when Mrs. Krannitz indicated that certain areas caused discomfort when touched. Mrs. Krannitz also had some limitation with her left shoulder which Dr. Hauser attributed to a prior shoulder injury.
Dr. Hauser reviewed the X-ray and MRI Mrs. Krannitz brought and detected no abnormalities in either one. Dr. Hauser opined that Mrs. Krannitz probably strained her neck during the car accident. He surmised that she did not suffer from a permanent injury because there were no objective findings to substantiate any ongoing problem. He expected her to lead a normal life and felt there was no need for further chiropractic treatment.
On cross-examination, Dr. Hauser testified that he believed Mrs. Krannitz developed stiffness and pain in her neck after the accident, probably from strain or sprain of the ligaments. There was no evidence that she broke anything or there were any dislocations.
The question of whether the accident was the proximate cause of Mrs. Krannitz's injuries is inextricably intertwined with a determination of her credibility. Leslie v. Briceley (Dec. 31, 1997), Washington App. No. 97CA10, unreported. The jury may not have believed Mrs. Krannitz's statements to the medical witnesses regarding the extent of her pain. Further, there is clearly evidence that Mrs. Krannitz exaggerated the extent of the accident and minimized her prior injuries when providing her history to these witnesses. Many of the tests and assumptions which her treating physicians made were based on statements by Mrs. Krannitz. Dr. Ball testified that there were objective findings of a new injury but also stated that the injury could have occurred months prior. Since Mrs. Krannitz had been treated for virtually the same symptoms only two days before the accident, Dr. Ball's testimony regarding the freshness of the injuries is not conclusive. In addition, there was conflicting testimony regarding whether Mrs. Krannitz had dislocated any vertebrae in her neck, had a bulging disc, and had any permanent injuries.
While Dr. Hauser did testify that in his opinion Mrs. Krannitz suffered a strained neck from the accident, a thorough examination of his testimony shows that he was basing his opinion on the symptoms described by Mrs. Krannitz and her medical records. He did not examine her at the time of the accident and testified that such an injury would have healed prior to his examination over a year later. Therefore, we conclude that Dr. Hauser's testimony does not require a finding that the jury's verdict has no rational basis in the record.
Equally important, there was evidence that Mrs. Krannitz suffered from neck and back problems and headaches prior to the accident. She had been treated by Dr. Kincaid for several years prior to the accident. Dr. Kincaid had previously found problems at one time or another with each of the vertebrae Mrs. Krannitz claims were dislocated by the 1996 accident. Perhaps most significant, Mrs. Krannitz had been treated only two days prior to the accident for neck problems and rigidity. Dr. Kincaid testified that in his opinion Mrs. Krannitz now suffers from problems resulting from the accident. He concluded that these problems resulted from the accident because her symptoms are now more severe than those prior to the accident. However, his conclusions regarding the severity of the symptoms, i.e. headaches and radiating pain, are based on Mrs. Krannitz's statements to him, not on objective medical findings.
Further, Dr. Kincaid acknowledged that at least some of Mrs. Krannitz's current problems are caused by an aggravation of her prior injuries. InLeslie, supra, we held that "the plaintiff bears the burden of proof to establish the extent of the aggravation within a reasonable degree of medical certainty and the amount of damages to be apportioned to the aggravation." If the plaintiffs do not introduce any evidence of apportionment, the jury would be speculating by making any damage award to them. Id., citing Callahan v. Massey (Oct. 29, 1984), Warren App. No. CA83-12-091, unreported; Stone v. Riffe (Feb. 25, 1997), Scioto App. No. 96CA2408, unreported (Harsha, J., concurring in part and dissenting in part). Appellants introduced no evidence at trial to prove which portion of Mrs. Krannitz's medical condition and treatment were attributable to the aggravation of her prior injuries. Rather, she sought to recover for all her medical treatments relating to her neck and headaches following the accident. Therefore, appellants improperly asked the jury to speculate regarding any damage award.
For these reasons, we overrule appellants' second assignment of error.
 IV.
In their third assignment of error, appellants argue that the trial court erred in denying their motion for a new trial on the issue of damages. Appellants contend that they are entitled to a new trial under Civ.R. 59(A)(4) (excessive or inadequate damages which appear to have been given under the influence of passion or prejudice), (A)(6) (the judgment is not sustained by the weight of the evidence), and (A)(7) (the judgment is contrary to law). Again, we disagree.
The decision to grant or deny a motion for a new trial is typically relegated to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of that discretion. Seee.g., Reed v. MTD Products, Inc. v. Midwest Industries (1996),111 Ohio App.3d 451; James v. Murphy (1995), 106 Ohio App.3d 627, 631;James v. James (1995), 101 Ohio App.3d 668, 674; Bible v. Kerr (1992),81 Ohio App.3d 225, 226. As we have often noted, an abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut.Ins. Co. (1998), 82 Ohio St.3d 339, 342; Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448.
Under Civ.R. 59(A)(4), a trial court may grant a new trial only if the movant demonstrates that the jury verdict was inadequate and that the jury gave its verdict under the influence of passion or prejudice. Slivkav. C.W. Transport, Inc. (1988), 49 Ohio App.3d 79, 80. In assessing whether the trial court abused its discretion in overruling a motion for new trial under Civ.R. 59(A)(4), we must consider: (1) the amount of the verdict; (2) whether the jury considered incompetent evidence; (3) any improper conduct by counsel; and (4) any improper conduct which can be said to have influenced the jury. Dillon v. Bundy (1991),72 Ohio App.3d 767, 774; Lavender v. Justice (Jan. 25, 1994), Pike App. No. 511, unreported. The size of the verdict, by itself, is not normally conclusive proof of passion or prejudice. Pearson v. Cleveland AcceptanceCorp. (1969), 17 Ohio App.2d 239, 245. However, if a jury verdict is so overwhelmingly disproportionate as to shock reasonable sensibilities, a finding of passion or prejudice is appropriate. Id.
In this case, appellants argue that the admission of the photographs of the vehicle was improper and influenced the verdict. However, we have already concluded that this evidence was properly admitted. Appellants also argue that there is no doubt that Mrs. Krannitz was injured and that appellee was at fault. As we discussed in the previous assignment of error, the jury could have justifiably had some doubt concerning whether Mrs. Krannitz was actually injured and if she was injured what, if any, portion of her injury was attributable to appellee's negligence. There is no evidence that counsel acted inappropriately or that the jury was influenced by improper conduct. Therefore, the trial court's denial of the motion under this subsection was not an abuse of discretion.
Under Civ.R. 59(A)(6), the court may grant a new trial if the judgment was not sustained by the weight of the evidence. A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. When conducting its review an appellate court must make every reasonable presumption in favor of the jury's findings of fact. Myers v. Garson
(1993), 66 Ohio St.3d 610, 614; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. As discussed previously, there is competent, credible evidence to support the jury's finding that appellee did not cause Mrs. Krannitz's injuries.
Appellants also argue that the trial court should have granted a new trial under Civ.R. 59(A)(7) because the judgment is contrary to law. We have found no basis to conclude that the jury's verdict in appellee's favor was contrary to law.
Therefore, the trial court's denial of appellants' motion for a new trial on the issue of damages was not an abuse of discretion and appellants' third assignment of error is overruled.
 V.
Having found no merit in any of appellants' assignments of error, we affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion
 _______________________ William H. Harsha, Judge