JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, Patrick Porach, after a jury verdict in favor of his employer in his workers' compensation claim, appeals the trial court's denial of his motion for new trial.
 {¶ 2} Porach testified as follows: he was working his usual night shift on July 24, 2000 when he bent down to pick up a full industrial-sized bucket of cleaning water. As he lifted the bucket he felt something "pop right in the middle just between where [one's] shoulder blade goes * * *. And it started burning going up and down [his] spine. [He] got an instant headache and [his] legs and feet wouldn't stop burning at all." He had to finish his shift because no one was available to replace him, but in the morning he went to MetroHealth's emergency room. He told the staff in the emergency room that, as soon as he lifted the bucket, he experienced "an instant headache and it stopped right there in the back of [his] head." He also told the emergency room staff that he had "pain going up and down both" his legs that "was burning" and that his feet felt as though he was "walking on balloons." Porach also told the staff that he had previously had three surgeries on his lower back.
 {¶ 3} His testimony continued: he then followed up at the orthopedic clinic for "cervical headaches" and his vision "getting all blurred, real fuzzy." These headaches `would just come on all by' themselves." At trial, Porach pointed to the area he felt "pop" on the day he lifted the bucket and agreed that the surgery on his neck was "just above the area where the pop was." Porach testified that he had told the emergency room staff that he injured his neck and showed them where the "pop" was. Tr. 15-20.
 {¶ 4} Although he testified that he had treated with other doctors in the interim, it was not until January 2002, eighteen months later, that Porach first consulted with the neurosurgeon who testified as his expert witness. This surgeon eventually performed two surgeries on Porach's cervical spine.
 {¶ 5} The neurosurgeon testified via videotape. On direct exam, he stated several times that he believed to a reasonable degree of medical certainty that the cervical damage resulted directly from Porach lifting the heavy bucket on July 24, 2000. On cross-examination, however, the neurosurgeon admitted that he was not familiar with many of Porach's medical records and that he had based his opinion on the history Porach had given him. The neurosurgeon then reviewed several records concerning other workers' compensation claims Porach had made and other treatments received for back injuries, as well as the workers' compensation form from the July 24, 2000 injury. After considering this documentation, the neurosurgeon testified he was still certain that Porach's injury resulted from his lifting the heavy bucket in July 2000.
 {¶ 6} Despite the neurosurgeon's and Porach's testimony, the jury found unanimously in favor of Porach's employer, Spin Cycle Laundry. Porach filed a motion for a new trial, which the court denied. Porach timely appealed, stating one assignment of error:
THE TRIAL JUDGE ABUSED HIS DISCRETION BY REFUSING TO GRANT A NEW TRIAL SINCE IT WAS APPARENT THAT THE JURY HAD UNJUSTIFIABLY DISREGARDED UNREFUTED EXPERT TESTIMONY.
 {¶ 7} Porach argues that because the only expert testimony presented at trial supported his workers' compensation claim, the jury must have lost its way and the trial court should have granted his motion for a new trial.
 {¶ 8} A motion for new trial is reviewed differently at the trial level than it is at the appellate level:
The trial court, when considering a motion for new trial on the manifest weight of the evidence, has a duty to review the evidence submitted at the trial and to pass upon the credibility of the witnesses and the evidence. * * * A trial court is not permitted to grant a new trial merely because it would have decided the case differently. * * * Rather, a trial court may grant a new trial only if there is no substantial, credible evidence upon which the jury could have arrived at its verdict. * * *An appellate court should view the evidence favorably to thetrial court's action.
(Emphasis added.) McCrae v. Wal-Mart Stores, Inc., Mahoning App. No. 04 MA 275, 2005-Ohio-4472, ¶ 13, internal citations omitted. This standard of review differs from the standard for, for instance, a summary judgment, which is reviewed de novo. The appellate court must affirm a trial court's denial of a new trial motion unless there is a total absence of credible evidence to support the trial court's verdict.
 {¶ 9} Although the neurosurgeon's testimony supported Porach's claim, his testimony was not the only credible evidence before the jury. The Bureau of Workers' Compensation introduced a number of pertinent medical records, as well as Porach's BWC claims.
Prior Injury
 {¶ 10} Among the documents in evidence were Porach's March 2000 medical records reflecting an acute cervical strain incurred in an automobile accident. This accident predated the alleged work injury by approximately four months. Evidence of an identical condition arising from a prior non-work related event can undermine a workers' claim for a later neck injury. Neither Porach's counsel nor the BWC counsel ever specifically asked why this previous neck injury could not have been the cause of Porach's current neck pain. Porach's counsel did ask, however, what the typical recovery period would be for the strain received in the auto accident. The expert replied that the recovery would typically be over a course of four to six weeks until the pain went away. Dep. at 45. At trial, Porach minimized the first neck injury: he testified that he actually complained much more about pain in his lower back at the hospital after the accident, and that it was not until the hospital staff asked him if anything else hurt that he told them that his neck was a little sore. He added: "But they really didn't do nothing about it, just told me to take it easy for awhile." Tr. 12. He never followed up on the neck injury, he said, because he "never had any problems." Tr. 13. Counsel also elicited from the expert that the records before him did not reflect that Porach sought any further treatment for this injury.
 {¶ 11} The lack of medical records following this prior accident does not completely resolve the question of whether the prior accident was a cause of his current complaint.[1]
There was a similar dearth of medical records for treatment of neck pain following the July 2000 work injury. For example, although Porach testified that he underwent physical therapy for neck pain after the alleged cervical injury that is the subject of this suit, there is no evidence of any such treatment. The jury could infer that the absence of records following both injuries cast doubt on the credibility of Porach's claimed medical history. The information contained in the medical records from the auto accident also casts doubt on Porach's credibility for another reason. He claims that he told the medical staff following the auto accident that his neck was "a little sore." Tr. at 12. Nonetheless, the staff marked "cervical strain" under "Impressions" in the diagnosis of injury section. In contrast, when testifying regarding his discussions with the medical staff after his alleged work injury, he claimed he complained more about the neck injury, which is not reflected at all in those medical records, than about the lower back pain, which is the sole subject discussed in the medical records for the work injury. Additionally, Porach testified that the referred pain to his head from his neck injury was so intense after the work injury that the hospital staff gave him "a shot of morphine to try and take care of overall pain" in his back and head. Tr. 17. This testimony contradicts the medical records, which state that he received only Tylenol #3.
 {¶ 12} Such conflicting evidence can function negatively when a jury considers the cause of a workers' injury and evaluates an expert's analysis of the cause of that injury, especially because the expert testified that he relied on Porach's recounting of his medical history for his opinion.
Delay in First Reporting Cervical Condition
 {¶ 13} Another document that casts doubt on Porach's claim of a neck injury occurring in July 2000 is the actual medical record from that date. This record reflects Porach's complaints of lower back pain, but, as he admitted in testimony, it makes no reference to any neck injury, despite his testimony that he clearly complained to the emergency room staff about it. In his deposition, Porach's expert explained that cervical pain often evolves after a low back strain. However, again he was not asked to explain the lapse of such an extraordinary period of time — 18 months — between the date of injury and a medical record first noting a cervical condition. Although Porach claims he received treatment after his work injury, he never provided any medical records confirming such treatment. Thus another question remained unresolved.
Delay in Filing a Claim for Cervical Injury
 {¶ 14} Porach did not file any claim for his neck injury, moreover, until March 2003, more than two and one-half years after the alleged date of his injury and more than two years after he filed his claim for his back injury, which injury allegedly occurred at the same time. Again, such unexplained delays establish a basis for questioning Porach's claim. Although Porach said he received treatment for his alleged neck pain after his work injury, he never provided medical records confirming this claim.
An Unexplained BWC Claim With An Unknown Employer
 {¶ 15} Most damaging to Porach's case, however, were the records of a workers' compensation claim filed in October 2001 in Porach's name, with the same date of birth and MetroHealth patient number as reflected on Porach's other medical records, for a neck injury incurred while the claimant was lifting cans of paint. Joint Exhibit 1. At trial, Porach denied ever working as a painter or ever injuring his neck while he was lifting anything other than the bucket of water in the July 2000 claim. He testified that he did not know how MetroHealth would come to have information that he was working as a painter for an unknown employer when he experienced sharp neck pain. Nor could he explain the Bureau of Workers' Compensation claim filed for this injury. That claim indicates that the first date of treatment for the injury lifting paint cans was October 12, 2001, 15 months before he filed his BWC claim for an even earlier injury and less than two weeks before any medical record reported any cervical injury whatsoever, except for the auto accident. Again, another unresolved question.
 {¶ 16} The possibility of a later injury while Porach was working for a different employer seriously damaged Porach's case. His subsequent medical records dramatically highlight the absence of any medical records immediately following the date of the injury in the claim on appeal. Additionally damaging was the failure of his expert to eliminate the previous and alleged subsequent injuries as the cause of his cervical condition.
 {¶ 17} Finally, the record clearly shows that the expert witness did not examine Porach until two-and-a-half years after the July 2000 injury he now claims caused his cervical damage. Since the neurosurgeon had not examined Porach until 2002, he would have had to rely on Porach's recitation of his history in deciding the cause of the injury. Despite Porach's testimony that he received medical treatment for this injury prior to consulting this neurosurgeon, Porach failed to submit any medical documentation for cervical treatment for the time between July 2000 and February 2002, when he finally consulted the neurosurgeon who served as his expert witness. The jury could have decided, therefore, that the actual cause of the cervical damage claimed in this appeal was unknown and that the July 2000 injury was too remote to clearly be the cause.
 {¶ 18} In a written opinion, Judge Patton explained the trial court's judgment entry denying the motion for new trial: "It was absolutely at the discretion of the jury how much weight they would place on the testimony of [the neurosurgeon], and it would appear from the jury's verdict that the doctor's credibility issues were too much for the Plaintiff to overcome." Journal entry of August 22, 2005. Although the BWC did not provide any testimonial evidence at trial to contradict the expert's support of Porach's claim, the documentary evidence provided substantial credible evidence to support the jury's verdict. The trial court did not err in denying the motion for new trial. Accordingly, this assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J. and Gallagher, J., concur.
[1] We also note that Porach's expert never attempted to explain the second injury as an aggravation of a pre-existing condition.